UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

TAMMY L. GREEN,

                             **Plaintiff,**

                 -against-                              **Index No. 15-CV-8204(ALC)(SN)**

NEW YORK CITY TRANSIT AUTHORITY,
ROOSEVELT I. LARRIER,

                          **Defendants.**

-------------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**JAMES B. HENLY**
**Vice President and General Counsel**
**NEW YORK CITY TRANSIT AUTHORITY**

130 Livingston Street –12th Floor
Brooklyn, New York 11201
(718) 694- 3823

Byron Z. Zinonos
of Counsel

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.......................................................... i-iv

PRELIMINARY STATEMENT....................................................... 1-4

RULE 12(B) STANDARD............................................................. 4-5

STATEMENT OF FACTS............................................................ 5-8

JUDICIAL NOTICE OF DOCUMENTS
SUBMITTED WITH A RULE 12 MOTION......................................... 8-9

POINT I

      PLAINTIFF'S TIME BARRED TITLE VII, ADA, AND ADEA
      CLAIMS SHOULD BE
      DISMISSED.................................................................... 9-11

POINT II

      PLAINTIFF'S UNTIMELY TITLE VII, ADA, AND ADEA CLAIMS
      SHOULD BE DISMISSED FOR FAILURE TO EXHAUST
      ADMINISTRATIVE REMEDIES.............................................. 11-13

POINT III

      PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED
      FOR FAILURE TO STATE A CLAIM....................................... 13-24

          1.  TITLE VII, ADEA, ADA, AND
              REHABILITATION ACT........................................... 13-14
          2.  HOSTILE WORK ENVIRONMENT............................. 14-18
          3.  TITLE VII RETALIATION ...................................... 18-21
          4.  EQUAL PAY ACT AND FLSA.................................... 21-23
          5.  OSHA ............................................................... 23
          6.  WHISTLEBLOWER PROTECTION ACT....................... 23
          7.  EXECUTIVE ORDER 11246..................................... 23-24
          8.  CLAIMS AGAINST LARRIER................................... 24

CONCLUSION ..................................................................... 24

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                    <u>Page</u>

Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002) ..................................... 15

Anand v. New York State Dep't of Taxation & Fin.,
No. 10-CV-5142 (SJF)(WDW), 2012 U.S. Dist. LEXIS 85744,
 (E.D.N.Y. June 18, 2012) ......................................................... 8

Arar v. Ashcroft, 585 F.3d 559 (2d Cir. 2009) ...................................... 4

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ............................................. 4

Awan v. Ashcroft, No. 09-CV-1653, 2010 U.S. Dist. LEXIS 103161,
(E.D.N.Y. Sept. 28, 2010) ......................................................... 9

Barone v. S&N Auerbach Mgt., 645 F. App'x 13(2d Cir. 2016) .................... 13

Belfi v. Prendergast, 191 F.3d 129 (2d Cir. 1999) ................................. 21

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) .............................. 4

Bermudez v. City of N.Y., 783 F.Supp.2d 560 (S.D.N.Y. 2011) .................... 16

Brass v. Am. Film Tech., Inc., 987 F.2d 142 (2d Cir. 1993) ....................... 8

Brown v. City of New York, 2015 U.S. App. LEXIS 19884 (2d Cir. 2015) ......... 19

Butts v. City of New York Dep't of Hous. Pres. & Dev.,
990 F.2d 1397 (2d Cir. 1993) .................................................... 11

Cowan v. Ernest Codelia, P.C., 149 F. Supp. 2d 67, 70 (S.D.N.Y. 2001) ............ 8

Dechberry v. New York City Fire Dep't, 2015 U.S. Dist. LEXIS 107346
(E.D.N.Y. Aug. 14, 2015) ........................................................ 20

DeJesus v. HF Mgt. Servs., 726 F.3d 85 (2d Cir. 2013) ............................ 22

Demoret v. Zegarelli, 451 F.3d 140 (2d Cir. 2006) ................................ 16

Deravin v. Kerik, 335 F.3d 195 (2d Cir. 2003) ................................... 11-12

Donovan v. OSHRC, 713 F.2d 918, 926 (2d Cir. 1983) ............................ 23

| **Cases** | **Page** |
|---|---|
| Edwards v. Elmhurst Hosp. Ctr., No. 11-CV-5348 (RRM)(LB), 2013 U.S. Dist. LEXIS 32571 (E.D.N.Y. Feb. 3, 2013) ................................. | 5 |
| E.E.O.C. v. Port Auth. of N.Y. & N.J., 768 F.3d 247 (2d Cir. 2014) .................. | 21 |
| Eramus v. Deutsche Bank Ams. Holding Corp., 2015 U.S. Dist. LEXIS 160351 (S.D.N.Y Nov. 30, 2015) ........................................................ | 17 |
| Forman v. City of N.Y., No 14-6282-LTS, 2017 U.S. Dist. LEXIS 45538 (S.D.N.Y. Mar. 27, 2017) ........................................................ | 13-14 |
| Fisk v. Letterman, 401 F.Supp.2d 362 (S.D.N.Y. 2005) ................................. | 5 |
| Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150 (2d Cir. 2006) ...... | 9 |
| Gordon v. N.Y.C. Bd. Of Educ., 232 F.3d 111 (2d Cir. 2000) ......................... | 19 |
| Graham v. Women in Need, Inc., 2014 U.S. Dist. LEXIS 74149 (S.D.N.Y. May 30, 2014) ........................................................ | 19 |
| Hahn v. Bank of Am. Inc., 2014 U.S. Dist. LEXIS 45886 (S.D.N.Y. Mar. 31, 2014) ........................................................ | 19-20 |
| Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993) ......................................... | 14-15 |
| Hayden v. Paterson, 594 F.3d 150 (2d Cir. 2010) ....................................... | 4 |
| Healy v. AIG Tech. Servs., No. 00-cv-3419(GBD), 2001 U.S. Dist. LEXIS 93 (S.D.N.Y. Jan. 11, 2001) ........................................................ | 24 |
| Hicks v. Baines, 593 F.3d 159 (2d Cir. 2010) ............................................. | 19 |
| I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759 (2d Cir. 1991) ........................................................ | 8 |
| Int'l Audiotext Network, Inc. v. American Telephone and Telegraph Co., 62 F.3d 69 (2d Cir. 1995) ........................................................ | 8, 9 |
| Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989) ................................... | 16 |
| Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991) ...................... | 8, 9 |
| Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015) .......................... | 10-16, 19 |

**Cases**                                                                                          **Page**

Lundy v. Catholic Health Sys. Of Long Is., Inc., 711 F.3d 106 (2d Cir. 2013) ......... 22

Marquez v. Starrett City Assoc., No. 13-CV-2362 (LDH)(LB),
2017 U.S. Dist. LEXIS 161800 (E.D.N.Y. Sep. 30, 2017) ................................ 14

Marshall v. OSHRC, 635 F.2d 544 (6th Cir. 1980)  ..................................... 23

McPartland v. Am. Broadcasting Cos., 623 F. Supp. 1334 (S.D.N.Y. 1985) ........... 23

Monell v. Dep't of Social Services, 436 U.S. 658 (1978)  .............................. 16

Nakahata v. New York-Presbyterian Healthcare Sys., 723 F.3d 192 (2d Cir. 2013) ... 22

Patterson v. County of Oneida, N.Y., 375 F.3d 206 (2d Cir. 2004) .................... 16

Pecorella v. Oak Orchard Community Health Ctr., Inc.,
559 F. Supp. 147 (W.D.N.Y. 1982) .................................................... 23

Pecorella v. Oak Orchard Community Health Ctr., Inc.,
722 F.2d 728 (2d Cir. 1983) ......................................................... 23

Raspardo v. Carlone, 770 F.3d 97 (2d Cir. 2014) ...................................... 15

Robles v. Cox & Co., 841 F.Supp.2d 615 (E.D.N.Y. 2012) ............................. 20

Rogers v. Makol, No. 3:13-cv-946(JAM),
2014 U.S. Dist. LEXIS 127650 (D. Conn. Sep. 10, 2014) ............................... 23

Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119 (2d Cir. 2005) ............ 8

Sykes v. Bank of Am., 723 F.3d 399 (2d Cir. 2013) ..................................... 5

Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003) ......................................... 11

Tolbert v. Smith, 790 F.3d 427 (2d Cir. 2015) .......................................... 15

Triestman v. Fed. Bureau of Prisons, 470 F.3d 471 (2d Cir. 2006) ..................... 5

University of Texas Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013) ...... 18

Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2d Cir. 2015) .............. 13, 18

Weise v. Syracuse University, 522 F.2d 397 (2d Cir. 1975) ............................. 23-24

**Cases**                                                                                      **Page**

Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62 (2d Cir. 2000) .............. 16

Williams v. N.Y.C. Hous. Auth., 458 F.3d 67 (2d Cir. 2006) ........................... 10-11

Zann Kwan v. Andalex Grp., LLC, 737 F.3d 834 (2d Cir. 2013) ...................... 18

## **PRELIMINARY STATEMENT**

Plaintiff pro se Tammy Green is presently employed by defendant New York City Transit Authority ("Transit Authority") in the title of Track Worker Specialist. In plaintiff's Second Amended Complaint ("Second Amended Complaint"), she asserts claims under Title VII, the Age Discrimination in Employment Act of 1967 ("ADEA"), the Rehabilitation Act of 1973 ("Rehabilitation Act"), the Americans with Disabilities Act of 1990 ("ADA"), the Family and Medical Leave Act of 1993 ("FMLA")[1], 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the Equal Pay Act of 1963, the Older Workers Benefit Protection Act ("OWBPA"), the Occupational Safety and Health Act ("OSHA"), the Civil Service Reform Act, the Whistleblower Protection Act, and Presidential Executive Orders 11246 of 1965.[2] The Transit Authority and defendant Roosevelt I. Larrier (together "Defendants") seek dismissal of the Second Amended Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure ("FRCP").

Briefly, plaintiff alleges that she began a relationship with her supervisor Larrier in 2012. During their relationship, plaintiff alleges that unidentified individuals at work made comments about plaintiff and her relationship with Larrier. Plaintiff also alleges that Larrier acted unprofessionally at work with plaintiff (e.g., "buckling" her knees or "body check[ing]" plaintiff), and told other employees that plaintiff gave him a sexually transmitted disease. Larrier also allegedly sent fourteen text messages from November 5, 2013 to either June 23 or June 24, 2014 that contained sexual photographs or sexual advances to plaintiff. Sometime after plaintiff picked into a new work location in December 2013, her relationship with Larrier ended.

---

[1] The Second Amended Complaint also lists various tort claims. However, plaintiff makes no allegations to support her FMLA or tort claims. Thus, these claims should be dismissed.

[2] Plaintiff also asserts multiple claims against the Transport Workers Union Local 100 ("TWU"), including Title VII, Executive Orders 11246 of 1965, and the Railway Labor Act of 1926. The TWU is not a party in the instant action. Thus, the claims against the TWU should be dismissed.

Plaintiff alleges that after their relationship ended, she was denied overtime opportunities, unknown individuals tampered with her personal belongings and work-related equipment, co-workers made comments about her mental and physical health, and accused plaintiff of engaging in criminal activities and terrorism.  On July 12, 2015, plaintiff's co-worker Levy allegedly swung an axe at the back of plaintiff's head while she was working.  Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire on July 21, 2015 (hereafter "EEOC Intake Questionnaire").  See EEOC Intake Questionnaire, annexed to the Zinonos Declaration dated April 27, 2018 ("Zinonos Dec.") as Exhibit ("Ex.") B.  On October 4, 2015, a Track Worker named Payton allegedly touched plaintiff's pants and thigh inappropriately.  Plaintiff then filed the instant action on October 16, 2015.

On an unspecified date in 2017, a supervisor named Nankoo allegedly made an inappropriate statement and sexual gesture towards plaintiff.  One month after this alleged incident, an individual named Wheeler allegedly made an inappropriate statement to plaintiff. Plaintiff also alleges on some unspecified date or year that an individual named Donald Angel touched her leg inappropriately.

At some unspecified time plaintiff was assigned to perform tasks involving asbestos removal while she was pregnant by a supervisor named Luis Rodriguez.  Although Rodriguez was unaware of her pregnancy, she alleges she was reprimanded for complaining about these assignments.  Plaintiff also alleges that Rodriguez called plaintiff a "bitch" on several occasions in front of plaintiff's co-workers.  Plaintiff also alleges that she was subject to unlawful surveillance by the Transit Authority, and that the Transit Authority uses soap that allegedly contains carcinogens.

Finally, plaintiff alleges she was denied a promotion to the title of Power Distribution Maintainer for using too much sick leave, which she asserts was due, in part, to a neck surgery in August 2016, as well as because plaintiff allegedly did not feel comfortable going to work.

Defendants seek dismissal of the Second Amended Complaint on several grounds. First, most of plaintiff's claims are time-barred. Plaintiff filed the EEOC charge on July 21, 2015, and any claims that accrued prior to September 24, 2014 are time barred. The only claim that allegedly occurred after July 21, 2014 is the axe-swinging incident by Levy.

Second, plaintiff failed to exhaust her administrative remedies with respect to virtually all of her discrimination claims in this action. In her July 21, 2015 EEOC Intake Questionnaire, plaintiff alleged she was discriminated against on the basis of her race, sex, age, disability and was subject to retaliation. See EEOC Intake Questionnaire, Ex. B. Plaintiff's sole basis for these claims was a single incident on July 12, 2015 in which a co-worker (Levy) allegedly swung an axe near the back of her head. She alleged that she believed the act "was a form of harassment to force me to leave my current job title." Id. at 2. Plaintiff makes no allegation in the EEOC Intake Questionnaire that she was engaged in a relationship with Larrier, that Larrier engaged in any inappropriate behavior with plaintiff, or that any other employee made inappropriate comments or engaged in inappropriate conduct toward plaintiff. Further, plaintiff's numerous allegations in the Second Amended Complaint are not reasonably related to the allegation that a co-worker swung an axe at the back of her head. Thus, plaintiff failed to exhaust many claims of discrimination outside of the alleged axe-wielding incident and should be dismissed.

Finally, plaintiff fails to state a claim under the remaining applicable statutes. The Second Amended Complaint is devoid of facts supporting any claim that she suffered an adverse employment action on the basis of any protected characteristic, that a hostile environment existed

due to alleged co-worker statements or conduct, or that she suffered any adverse employment action in retaliation for her protected activity. For these reasons, Defendants request dismissal of the Second Amended Complaint.

## RULE 12(B) STANDARD

To survive a motion to dismiss, "a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). This plausibility standard demands more than a "sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Rather, to state a facially plausible claim, Iqbal requires a party to "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In addition, those factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The Iqbal Court suggested a two-pronged approach by which courts may assess whether a complaint states a plausible claim for relief. Iqbal, 556 U.S. at 678-79; see also Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Courts may first review a complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679; Hayden, 594 F.3d at 161-62. The Court can then consider whether plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. For the purposes of this 12(b)(6) motion, plaintiff's well-pleaded facts are assumed to be true and all reasonable inferences therefrom are construed in the light most favorable to plaintiff, the non-moving party. See Arar v. Ashcroft, 585 F.3d 559, 567 (2d Cir. 2009).

4

"Pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" <u>Sykes v. Bank of Am.</u>, 723 F.3d 399, 403 (2d Cir. 2013), <u>quoting</u> <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006)(internal quotation marks omitted).  However, "The Court's obligation to construe pro se submissions liberally does not require the Court to accept allegations that are contradicted by documents incorporated by reference in the complaint."  <u>Edwards v. Elmhurst Hosp. Ctr.</u>, No. 11-CV-5348 (RRM)(LB), 2013 U.S. Dist. LEXIS 32571, at *12-13 (E.D.N.Y. Feb. 3, 2013), <u>citing</u> <u>Fisk v. Letterman</u>, 401 F.Supp.2d 362, 368 (S.D.N.Y. 2005)(citation omitted).  Even a pro se complaint, however, must provide a plausible factual basis to support a claim.

## STATEMENT OF FACTS

Plaintiff has been employed with the Transit Authority since June 27, 1994, and has held the titles of Track Worker and Track Worker Specialist during her time with the Transit Authority.  <u>See</u> Second Amended Complaint, annexed to the Zinonos Dec. as Ex. A, p. 17. Beginning in 2012, plaintiff began a relationship with her supervisor Larrier.  <u>Id.</u>, p. 41 at ¶ 5. During plaintiff's relationship with Larrier, she alleges that an unidentified supervisor called her a "cheap bitch", and that other unidentified employees made unspecified comments about her relationship with Larrier.  <u>Id.</u>, p. 41 at ¶¶ 9-10.  During their relationship, Larrier would allegedly "buckl[e]" her knees or "body check" plaintiff as she walked into work.  <u>Id.</u>, p. 41 at ¶ 11. Larrier sent plaintiff fourteen text messages from November 5, 2013 to either June 23 or June 24, 2014 that contained sexual photographs or sexual advances to plaintiff.  <u>Id.</u>, pp. 18; 20-22, 41 at ¶ 17.  On unspecified dates, Larrier allegedly told fellow employees, supervisors, managers and superintendents that plaintiff gave him a sexually transmitted disease.  <u>Id.</u>, p. 18.  Plaintiff believes this was done to "embarrass[], humiliate[], and shame[ plaintiff] publicly" and in an

effort to force plaintiff to leave her work assignment, quit the Transit Authority, or be fired. Id. Plaintiff alleges the relationship "effectively ended" after she picked into a new work location. Id., p. 42 at ¶ 13.[3]

Following the end of their relationship, plaintiff allegedly was denied overtime opportunities on unspecified occasions. Id., pp. 19; 29-30; 42 at ¶ 14. Plaintiff also alleges that unidentified individuals went through her personal belongings, tampered with her car, phone, and work-related equipment. Id., pp. 25-26; 42 at ¶¶ 15, 18; 43 at ¶ 26. In the summer of 2014, unidentified co-workers accused plaintiff of being "bi-polar and difficult to work with," spreading a sexually transmitted disease to Larrier, selling drugs and "being a terrorist, .[…] carrying a bomb, and spreading anthrax." Id., pp. 19; 22; 24-25; 42 at ¶¶ 16, 21. Plaintiff also alleges that Transit Authority supervisors and coworkers took photos and video of her performing her work. Id., pp. 19, 23. Unidentified individuals also allegedly approached plaintiff in a threatening manner when she signed in for work at unspecified times, which resulted in plaintiff calling out sick to avoid them. Id., p. 23.

On July 12, 2015, a co-worker named Levy allegedly swung an axe at the back of plaintiff's head while she was working. Id., pp. 14; 24; 42 at ¶ 17.[4] Plaintiff filed an EEOC Intake Questionnaire on July 21, 2015. EEOC Intake Questionnaire, Ex. B. Plaintiff alleged she was discriminated against on the basis of her race, sex, age, disability and was subject to retaliation. Id. Plaintiff's sole basis for these claims was the July 12, 2015 incident with Levy. Id. at 2. Plaintiff alleged that she felt "it was a form of harassment to force [her] to leave [her]

---

[3] It is inferred based on the Second Amended Complaint that plaintiff changed her work location some time after December 2013. Id., p. 42 at ¶¶ 12-13. However, plaintiff alleges that she received messages throughout her relationship with Larrier, and that the last message received was on June 24, 2014. Id., p. 41 at ¶ 7.

[4] Plaintiff asserts on page 42 of the Second Amended Complaint that the incident with Levy occurred in 2014. However, plaintiff alleges in both her EEOC Intake Questionnaire (Ex. B) and on page 14 of the Second Amended Complaint that the incident with Levy occurred in 2015.

current job title." Id. at 2.  Plaintiff alleged the reasons given to her for the acts were "None –

maybe b/c I was too slow at my job & because of other statements made to harass me to force me

to leave." Id. at 2.  The EEOC issued a Dismissal and Notice of Right to Sue letter on September

16, 2015.  See EEOC Notice of Rights Letter, annexed to the Zinonos Dec. as Ex. C.

Following the issuance of the EEOC Notice of Rights Letter, on October 4, 2015 a Track

Worker named Payton allegedly touched plaintiff's pants and thigh inappropriately.  Second

Amended Complaint, Ex. A, pp. 15; 24.  Payton later apologized for this behavior. Id. at 15.

Plaintiff filed the instant action on October 16, 2015.  See Complaint, annexed to the Zinonos

Dec. as Ex. D.  On an unspecified date in 2017, a supervisor named Nankoo allegedly made an

inappropriate statement and sexual gesture towards plaintiff.  See Second Amended Complaint,

Ex. A, p. 23; 43 at ¶ 23.  One month after the incident with Nankoo, an individual named

Wheeler allegedly made an inappropriate statement to plaintiff. Id., pp. 23-24; 43 at ¶ 24.  On an

unspecified date, plaintiff alleges that an individual named Donald Angel touched her leg

inappropriately. Id., pp. 24; 43 at ¶ 25.

On unspecified days, a supervisor named Luis Rodriguez allegedly assigned plaintiff to

perform tasks involving asbestos removal. Id., pp. 28; 43 at ¶ 30.   Plaintiff alleges she was

pregnant at the time, but that Rodriguez was unaware of her pregnancy. Id., pp. 28; 43 at ¶ 30.

Plaintiff asserts that she was later reprimanded for complaining about these asbestos

assignments. Id., p. 43 at ¶ 30.  Plaintiff further alleges that Rodriguez called plaintiff a "bitch"

on several occasions in front of plaintiff's co-workers. Id., pp. 28; 43, ¶ 31.  Plaintiff also alleges

that she was subject to unlawful surveillance by the Transit Authority, and that the Transit

Authority uses soap that allegedly contains carcinogens. Id., p. 33.

Finally, plaintiff alleges that she was recently denied a promotion to the title of Power Distribution Maintainer. Id., p. 44 at ¶ 33. The explanation given to plaintiff for the reason she was denied the promotion was because she "used too much of [her] sick leave." Id. Plaintiff alleges the use of sick leave was partly due to a neck surgery in August 2016 which caused her to miss three weeks of work, as well as some unspecified number of days plaintiff did not come to work because she "did not feel comfortable going to work." Id.

## JUDICIAL NOTICE OF DOCUMENTS
## SUBMITTED WITH A RULE 12 MOTION

It is well established that documents referenced in a complaint or necessary to the allegations can be considered on a Rule 12 motion. See Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991). The Court can also consider documents that are in plaintiff's possession or that plaintiff knew of and relied on in bringing the action. See Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Cowan v. Ernest Codelia, P.C., 149 F. Supp. 2d 67, 70 (S.D.N.Y. 2001). On a motion to dismiss, the Court may consider documents outside the pleadings when they are deemed to be "integral" to the complaint. See Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005); Anand v. New York State Dep't of Taxation & Fin., No. 10-CV-5142 (SJF)(WDW), 2012 U.S. Dist. LEXIS 85744, at *6, n. 2 (E.D.N.Y. June 18, 2012)(this Court found that an arbitrator's decision was "integral" to the complaint because it elucidated the nature of the allegations and disciplinary proceedings against plaintiff); I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir. 1991) (Second Circuit "decline[d] to close our eyes" and permit "a plaintiff to evade" a proper Rule 12 motion simply because plaintiff chose not to attach or incorporate a pertinent document); Int'l Audiotext Network, Inc. v. American Telephone and Telegraph Co., 62 F.3d 69, 71-72 (2d Cir. 1995) (on Rule 12 motion, court can consider document integral to complaint but

which plaintiff chose not to attach or incorporate by reference); Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (on Rule 12 motion, documents properly considered because plaintiffs had "undisputed notice" of their contents and the documents were "integral" to claim.)

Further, courts may consider "matters on which judicial notice may be taken," such as public documents. See Kramer, 937 F.2d at 774; Awan v. Ashcroft, No. 09-CV-1653, 2010 U.S. Dist. LEXIS 103161, at *4 (E.D.N.Y. Sept. 28, 2010) ("On a motion to dismiss, courts may take judicial notice of public records."); Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006) (summary order) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotation marks omitted).

The Transit Authority requests this Court take judicial notice of the following administrative documents:

1. Plaintiff's U.S. Equal Employment Opportunity Commission Intake Questionnaire ("EEOC Intake"), dated July 21, 2015, Zinonos Dec. as Ex. B.
2. The EEOC's Dismissal and Notice of Rights Letter ("EEOC Notice of Rights Letter"), dated September 16, 2015, Zinonos Dec. as Ex. C.

Plaintiff has actual notice of these documents and their existence and contents are not in dispute. These documents, therefore, are appropriate for consideration on this motion.

**POINT I**

**PLAINTIFF'S TIME BARRED TITLE VII, ADA, AND
ADEA CLAIMS SHOULD BE DISMISSED**

An individual may bring a Title VII suit in federal court only if a timely charge has been filed with the EEOC and a Right to Sue letter has been issued. See 42 U.S.C. § 2000e-5; see also Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015), citing Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006)("The complainant must file the complaint with the relevant agency 'within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC.'").   An individual must file a federal complaint within 90 days of receipt of the Right to Sue letter from the EEOC. See 42 U.S.C. § 2000e-5(f)(1).

Plaintiff filed her EEOC Intake Questionnaire on July 21, 2015.  See EEOC Intake Questionnaire, Zinonos Dec., Ex. B at 4.   Therefore, any incidents that occurred before September 24, 2014 are time-barred.

Plaintiff asserts that she was subject to discrimination and a hostile work environment during her relationship with Larrier between 2012 and December 2013, and that Larrier sent a series of illicit messages to plaintiff until June 23, 2014. See Ex. A, pp. 22, 41 at ¶¶ 5, 11, 42 at ¶ 13. Plaintiff also alleges that unidentified individuals made comments about plaintiff and about her relationship with Larrier during their relationship. Id., p. 41 at ¶¶ 9-10. As these events all occurred before September 24, 2014, they are time-barred.

The Second Amended Complaint also contains allegations of co-workers tampering with plaintiff's car in the summer of 2014, and that her phone was being tampered with in April 2013 or 2014. Id., pp. 42 at ¶¶ 14-15, 18; 43 at ¶ 26. Plaintiff also alleges that in the summer of 2014, unidentified coworkers accused plaintiff of being "bi-polar and difficult to work with," spreading

a sexually transmitted disease to Larrier, selling drugs and "being a terrorist, […] carrying a bomb, and spreading anthrax." Id., pp. 19; 22; 24-25; 42 at ¶¶ 16, 21.   Assuming plaintiff purports a claim of hostile work environment, these claims are also time barred, as the alleged actions also took place before September 24, 2014.

## POINT II

### PLAINTIFF'S UNTIMELY TITLE VII, ADA, AND ADEA CLAIMS SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

"Before bringing a Title VII suit in federal court, an individual must first present' the claims forming the basis of such a suit…in a complaint to the EEOC or the equivalent state agency.'" Littlejohn, 795 Fl3d at 322, quoting Williams, 458 F.3d at 69. An exception to the exhaustion of administrative remedies is when a claim, although not stated in an EEOC charge, is reasonably related to the charge.  Claims are "reasonably related" in three situations: "1) where 'the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'; 2) where the complaint is 'one alleging retaliation by an employer against an employee for filing an EEOC charge'; and 3) where the complaint 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003), quoting Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993)(superseded on other grounds)(additional internal quotation marks omitted).   When considering whether a claim is reasonably related, "we focus 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" Littlejohn, 795 F.3d at 322, quoting Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir.

2003) (alteration in original)(internal quotation marks omitted).  "[I]f the factual allegations in the EEOC charge 'suggest [two] forms of discrimination' —even though the charge itself specifies only one- 'so that the agency receives adequate notice to investigate discrimination on both bases,' the claims are reasonably related to each other." Id., quoting Deravin, 335 F.3d at 202.

In Plaintiff's EEOC Intake Questionnaire, plaintiff alleged she was discriminated against on the basis of her race, sex, age, disability and that she was subject to retaliation.  EEOC Intake Questionnaire, Zinonos Dec as Ex. B.  Plaintiff's sole basis for these claims was a single incident on July 12, 2015, in which she alleges that her co-worker Levy swung an axe at the back of her head. Id. at 2.  Plaintiff alleges that she felt "it was a form of harassment to force [her] to leave [her] current job title." Id. at 2.  Plaintiff alleged the reasons given to her for the acts were "None – maybe b/c I was too slow at my job & because of other statements made to harass me to force me to leave." Id. at 2.  Plaintiff makes no mention of Larrier or any other co-workers or supervisors in the EEOC Intake Questionnaire, nor does she allege that any other incidents occurred.

All of plaintiff's Title VII, ADA and ADEA claims in the Second Amended Complaint, save for the axe-swinging incident, are unexhausted and thus subject to dismissal.  Further, none of the unexhausted claims are reasonably related to the axe-swinging incident asserted in the EEOC Intake Questionnaire.  Allegations of sexually inappropriate conduct or comments, denial of overtime, statements regarding plaintiff's mental health, tampering with personal and work property, unfavorable work assignments and the denial of a promotion cannot be reasonably expected to grow out of plaintiff's claim that her co-worker swung an axe at the back of her head.   Furthermore, the EEOC Intake Questionnaire contains no factual descriptions of

12

discrimination on the basis of race, sex, age, disability, or retaliation.  Thus, excluding the Levy axe-swinging incident, plaintiff failed to exhaust her administrative remedies with respect to any Title VII, ADA, and ADEA claims.

## POINT III

### PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

1.      Title VII, ADEA, ADA, and Rehabilitation Act

Plaintiff's exhausted Title VII, ADEA and ADA claims involve the July 12, 2015 incident, in which a co-worker named Levy allegedly swung an axe at the back of her head during work.  Plaintiff has failed to state a plausible claim of race, sex, age and disability discrimination under Title VII, the ADEA, and the ADA, as well as the Rehabilitation Act.

In a Title VII employment discrimination case, "a plaintiff must plausibly allege that (1) the employer took adverse action against [them] and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015).  "At the pleading stage…a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly· show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.  Id., citing Littlejohn, 795 F.3d at 310.  "Under the ADEA, a plaintiff must allege that age was the 'but for' cause – not merely a motivating factor – of the adverse employment action.  Barone v. S&N Auerbach Mgt., 645 F. App'x 13, 14 (2d Cir. 2016), citing Vega, 801 F.3d at 87.  "To survive a Rule 12(b)(6) motion to dismiss, an ADA claim need only allege facts providing 'plausible support for the reduced requirements' of the prima facie case."  Forman v. City of N.Y., No 14-6282-LTS, 2017

U.S. Dist. LEXIS 45538, at *9-10 (S.D.N.Y. Mar. 27, 2017), quoting Littlejohn, 795 F.3d at 311.

The same analysis applies to claims brought under the Rehabilitation Act, the NYSHRL and the

NYCHRL. See Marquez v. Starrett City Assoc., No. 13-CV-2362 (LDH)(LB), 2017 U.S. Dist.

LEXIS 161800, at *13 (E.D.N.Y. Sep. 30, 2017)(collecting cases).

Here, Plaintiff's allegation that she suffered from race, sex, age, or disability

discrimination as a result of Levy swinging an axe at the back of her head is without merit.

Nowhere in plaintiff's EEOC Intake Questionnaire, nor in the Second Amended Complaint, does

plaintiff state that the action by Levy was taken on the basis of any protected characteristic.

Although plaintiff alleges in her EEOC Intake Questionnaire that this action was a "form of

harassment", plaintiff fails to allege any additional facts to support that this action was taken on

the basis of her protected characteristics.   While plaintiff alleges that this incident "stemmed

from Larrier talking about [her] behind [her] back," (Second Amended Complaint, Zinonos Dec.

as Ex. A, p. 42 at ¶ 17), the Second Amended Complaint is devoid of facts that support a claim

of race, sex, age, or disability discrimination.   For the aforementioned reasons, these claims

should be dismissed.

### 2 .   Hostile Work Environment Claims

Plaintiff alleges that she was subjected to a hostile work environment on the basis of her

sex.  Assuming this Court construes plaintiff's Second Amended Complaint to include both Title

VII and §§ 1981 and 1983 hostile work environment claims, these claims should be dismissed.

"To establish a hostile work environment under Title VII, § 1981, or § 1983, a plaintiff

must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult

that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment.'"  Littlejohn, 795 F.3d at 320-321, quoting Harris v.

14

Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Id., quoting Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014) (additional citations omitted). "The incidents complained of 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Raspardo, 770 F.3d at 114, quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)(internal quotation marks omitted). Courts consider "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Littlejohn, 795 F.3d at 321, quoting Harris, 510 U.S. at 23. "It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015), citing Alfano, 294 F.3d at 374.

Construing plaintiff's allegation that the axe-swinging incident with Levy created a hostile work environment, this claim should be dismissed. As stated previously, a majority of plaintiff's Title VII hostile work environment claims are either unexhausted or are time barred. Even assuming, arguendo, that plaintiff's Hostile Work Environment Claims are timely and have been exhausted, she still fails to state a claim. First, plaintiff fails to state that the hostile work environment was created because of any of plaintiff's protected characteristics. Moreover, as discussed below, plaintiff's allegations sufficiently continuous and concerted in order to be deemed pervasive. For these reasons, plaintiff's Title VII hostile work environment claims should be dismissed.

Section 1981, in part, provides that "all persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts … as is enjoyed by white citizens…." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004), quoting 42 U.S.C. § 1981(a).  Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Id., citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68-69 (2d Cir. 2000). "When the defendant is a state actor, Section 1983 is the exclusive remedy for violations of rights guaranteed under 1981." Bermudez v. City of N.Y., 783 F.Supp.2d 560, 576 (S.D.N.Y. 2011), citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989)(additional citations omitted).

"Section 1983 … allows an action at law against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" Id., quoting 42 U.S.C. § 1983. "Section 1981 has been interpreted to 'provide[] a cause of action for race-based employment discrimination based on a hostile work environment.'" Littlejohn, 795 F.3d at 320, quoting Whidbee, 223 F.3d at 69 (2d Cir. 2000). Additionally, "Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, 'protect[s] public employees from various forms of discrimination, including hostile work environment and disparate treatment' on the basis of race." Id., quoting Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006).

"When a defendant sued for discrimination under §§ 1981 or 1983 is a municipality, 'the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.'" Littlejohn, 795 F.3d at 314-315, quoting Patterson, 375 F.3d at 226; see also

<u>Jett</u>, 491 U.S. at 733-736; <u>see</u> <u>also</u> <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 692-694 (1978).

Plaintiff's §§ 1981 and 1983 hostile work environment claims should also be dismissed. As an initial matter, plaintiff has failed to plead facts in the Second Amended Complaint that would suggest that a municipal policy or custom caused a deprivation of a right. Moreover, the Second Amended Complaint is largely devoid of any facts to suggest that a hostile work environment occurred because of a protected characteristic. For example, plaintiff asserts that "Larrier has created a hostile work environment for me where I am constantly being set up to fail in hopes of them having cause to fire me." Second Amended Complaint, Zinonos Dec. as Ex. A, p. 43 at ¶ 32. Plaintiff also alleges that she was subject to a hostile work environment when unidentified individuals took cellphone pictures and video recordings of plaintiff during her job performance. <u>Id.</u>, p. 19.

Finally, plaintiff lists a series of incidents that she alleges constitute "hostile work environment of harassment (sex discrimination)." <u>Id.</u>, p. 23. This includes plaintiff being called a terrorist, Levy swinging his axe at plaintiff, the tampering of plaintiff's personal and work equipment, and comments to plaintiff by coworkers at unspecified times, an inappropriate statement and sexual gesture towards plaintiff by supervisor Nankoo in 2017, and an inappropriate statement by Wheeler in 2017. These stray remarks on a few isolated incidents do not rise to the level of a severity or pervasiveness to constitute a hostile work environment.

With respect to plaintiff's allegations that on two separate occasions she was inappropriately touched on her leg or thigh, these actions do not rise to the level of creating a hostile work environment. The Second Circuit has found that similar conduct that is alleged in the Second Amended Complaint falls short of creating a hostile work environment. <u>See</u> <u>Eramus</u>

v. Deutsche Bank Ams. Holding Corp., 2015 U.S. Dist. LEXIS 160351, at *15-16 (S.D.N.Y

Nov. 30, 2015)(collecting cases).  Moreover, these two incidents, one occurring on October 4,

2015, the other occurring on an unspecified date, are not sufficiently continuous enough to be

deemed pervasive.  Thus, plaintiff's hostile work environment claims should be dismissed in

their entirety.

       3.     Title VII Retaliation Claims

      To the extent that this Court will construe plaintiff's Second Amended Complaint to

assert a claim of retaliation, these claims should be dismissed as well.  "Title VII provides that

'[i]t shall be an unlawful employment practice for an employer to discriminate against any of his

employees . . . because [plaintiff] has opposed any practice made an unlawful employment

practice by this subchapter, or because he has made a charge, testified, assisted, or participated in

any manner in an investigation, proceeding, or hearing under this subchapter.'"  Vega, 801 F.3d

at 89-90, quoting 42 U.S.C. § 2000e-3(a).  For a retaliation claim to survive a motion to dismiss,

"the plaintiff must plausibly allege that: (1) defendants discriminated ''[*sic*] or took an adverse

employment action ''[*sic*] against him, (2) 'because' he has opposed any unlawful employment

practice."  Id. at 90.

      "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff

must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."

Id., citing University of Texas Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

"'But-for' causation does not[, however,] require proof that retaliation was the only cause of the

employer's action, but only that the adverse action would not have occurred in the absence of the

retaliatory motive.'"  Id. at 90, quoting Zann Kwan v. Andalex Grp., LLC, 737 F.3d 834, 846 (2d

Cir. 2013).

"To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Littlejohn, 795 F.3d at 315-316, quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)(internal quotation marks omitted). "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" Id. at 319, quoting Gordon v. N.Y.C. Bd. Of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

Three months following the decision in Littlejohn, the Second Circuit held that a two month passage of time between a protected activity and an alleged retaliatory act, "absent other supporting factual allegations," is "too attenuated" to establish that the act was a product of retaliatory motive. Brown v. City of New York, 2015 U.S. App. LEXIS 19884, at *3 (2d Cir. 2015) ("[t]he time lapses between [plaintiff's] protected activities and the alleged retaliatory acts – ranging from two months to several years – were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations."). 518-4714

To establish a causal relationship between a protected activity and alleged retaliatory action, "[d]irect evidence of a causal relationship can consist of documents or statements that 'reflect or suggest' such a relationship." Graham v. Women in Need, Inc., 2014 U.S. Dist. LEXIS 74149, at *12-13 (S.D.N.Y. May 30, 2014), quoting Hahn v. Bank of Am. Inc., 2014

U.S. Dist. LEXIS 45886, at *17 (S.D.N.Y. Mar. 31, 2014).  "Simply pleading that an adverse employment action occurred later in time than plaintiff's protected activity is insufficient to survive a motion to dismiss."  Dechberry v. New York City Fire Dep't , 2015 U.S. Dist. LEXIS 107346, at *53 (E.D.N.Y. Aug. 14, 2015) (collecting cases in which retaliation claims were dismissed when plaintiff failed to allege any facts to infer a causal nexus between the protected activity and the adverse employment action).  Further, "engaging in protected activity does not entitle an employee to a lifelong presumption of retaliation for any adverse employment action."  Robles v. Cox & Co., 841 F.Supp.2d 615, 630 (E.D.N.Y. 2012).

Here, plaintiff filed the EEOC Intake Questionnaire on July 21, 2015 and commenced this lawsuit on October 16, 2015.  Plaintiff alleges that she was subject to retaliation when she was accused of terrorism, when her personal belongings and work-related equipment was tampered with, when she was given false information to set her up for discipline, when she was assigned asbestos removal work assignments, when she was denied overtime, when Rodriguez made comments about her to co-workers, and as a result of her interactions with Nankoo, Wheeler, Angel, Payton and Levy.  See Second Amended Complaint, Zinonos Dec. as Ex. A, pp. 14-15; 19; 23-30; 42 at ¶¶ 15, 17-18; 43 at ¶¶ 23-26.  Plaintiff fails to specify when many of the aforementioned incidents took place.  As a result, she fails to establish a temporal proximity between these incidents and either the filing of the EEOC Intake Questionnaire or the commencement of this lawsuit.  With respect to the incidents which plaintiff specifies dates, over two years have passed since the filing of the EEOC Intake Questionnaire and this lawsuit being filed and the incidents with Nankoo and Wheeler.  The temporal proximity between the protected activities and the alleged adverse employment action is insufficient to support an inference of a causal connection between the protected activities and the adverse action taken against plaintiff.

20

With respect to plaintiff's allegation that Payton touched her inappropriately on October 4, 2015, over two months passed since the filing of the EEOC Intake Questionnaire and this incident occurring. This, too, is insufficient to support an inference of a causal connection between the incident with Payton and her protected activity. Thus, plaintiff's retaliation claims should be dismissed.

### 4.    Equal Pay Act and FLSA

Plaintiff also fails to state a claim under the EPA. The EPA prohibits employers from "paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). "Thus, to prove a violation of the EPA, a plaintiff must demonstrate that '[(1)] the employer pays different wages to employees of the opposite sex; [(2)] the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and [(3)] the jobs are performed under similar working conditions.'" E.E.O.C. v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254-55 (2d Cir. 2014), quoting Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999) (internal quotation marks omitted).

Here, plaintiff fails to allege any facts to support a claim under the EPA. Plaintiff's allegations include a denial of overtime opportunities (see Second Amended Complaint, Zinonos Dec. as Ex. A, pp. 5, 19, 28), "hours…being shorted" from plaintiff's check (Id., p. 29), and a dispute with management over whether or not plaintiff refused a direct order to sign out of work on January 4, 2018 (Id., pp. 29-30). Plaintiff makes no allegations that male employees performing the same work under similar working conditions were paid different wages than plaintiff or other female employees. Thus, plaintiff's EPA claim should be dismissed.

To the extent that this Court will construe plaintiff's Second Amended Complaint to allege FLSA claims with respect to overtime, these claims should be dismissed as well.

"Section 207(a)(1) of FLSA requires that, 'for a workweek longer than forty hours,' an employee who works 'in excess of' forty hours shall be compensated for that excess work 'at a rate not less than one and one-half times the regular rate at which he is employed' (i.e., time and a half)." Lundy v. Catholic Health Sys. Of Long Is., Inc., 711 F.3d 106, 113-114 (2d Cir. 2013). To state a FLSA overtime claim, a plaintiff must first "sufficiently allege 40 hours of work in a given work-week as well as some uncompensated time in excess of the 40 hours." Id at 114. Plaintiff must also "plead sufficient facts to make it plausible that they worked uncompensated hours in excess of 40 in a given week." Nakahata v. New York-Presbyterian Healthcare Sys., 723 F.3d 192, 201 (2d Cir. 2013). Although the pleading standard does not require "plaintiffs to keep careful records and plead their hours with mathematical precision," the standard does require plaintiffs to draw on their "memory and experience that led them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place." DeJesus v. HF Mgt. Servs., 726 F.3d 85, 90 (2d Cir. 2013).

Here, plaintiff fails to allege with any specificity that she worked over forty hours in a given work week. Plaintiff also fails to allege that she was uncompensated for time worked in excess of forty hours. Instead, plaintiff conclusorily alleges that at some unspecified time she was "denied or skipped overtime on a regular basis, or not told I got the overtime [and] lead to AWOL." Second Amended Complaint, Zinonos Dec as Ex. A, p. 19; see also pp. 5, 28-30, 42. Although plaintiff alleges that at some unspecified time her "[h]ours were being shorted" from her paycheck by MS I Medina (Id., p. 29), she does not allege that this is in connection with any

overtime worked in a given week.  For these reasons, plaintiff's FLSA overtime claim should be dismissed.

   5.   OSHA

   Plaintiff also asserts a violation of an unspecified section of OSHA for "using a known carcinogen in the NYCTA even though it has been banned." Id., p. 33.  "Under OSHA, employees do not have a private right of action." Donovan v. OSHRC, 713 F.2d 918, 926 (2d Cir. 1983), citing Marshall v. OSHRC, 635 F.2d 544, 550-551 (6th Cir. 1980) (internal citations omitted).  Thus, plaintiff's unspecified OSHA claims should be dismissed.

   6.   Whistleblower Protection Act

   Plaintiff's Whistleblower Protection Act claims should be dismissed as well.  "The Whistleblower Protection Act of 1989 […] protects federal employees against retaliation by their employers after reporting evidence of agency misconduct." Rogers v. Makol, No. 3:13-cv-946(JAM), 2014 U.S. Dist. LEXIS 127650, at *12-13 (D. Conn. Sep. 10, 2014), citing 5 U.S.C. §§ 1201 et seq. Plaintiff is not a federal employee, but rather an employee of the Transit Authority.  In addition, plaintiff has failed to allege that she was retaliated against for reporting evidence of misconduct by the Transit Authority.   Thus, Plaintiff's claims under the Whistleblower Protection Act should be dismissed.

   7.   Executive Order 11246

   Plaintiff also asserts claims Executive Order 11246 of 1965.  Executive Order 11246 does not give rise to a private cause of action; enforcement is limited to the U.S. Department of Labor. See McPartland v. Am. Broadcasting Cos., 623 F. Supp. 1334, 1339-1340 (S.D.N.Y. 1985), citing Pecorella v. Oak Orchard Community Health Ctr., Inc., 559 F. Supp. 147, 150 (W.D.N.Y. 1982), aff'd. 722 F.2d. 728 (2d Cir. 1983); also citing Weise v. Syracuse University, 522 F.2d

397, 411, n. 23 (2d Cir. 1975).   Thus, plaintiff's Executive Order 11246 claims should be dismissed.

    8.    <u>Claims against Larrier</u>

Plaintiff's claims against Larrier should also be dismissed.  The Second Circuit has held that individuals are not personally liable under Title VII, the ADEA, the ADA or the Rehabilitation Act.  <u>See</u> <u>Healy v. AIG Tech. Servs.</u>, No. 00-cv-3419(GBD), 2001 U.S. Dist. LEXIS 93, at *4-5 (S.D.N.Y. Jan. 11, 2001).  Further, the Second Amended Complaint is devoid of NYSHRL or NYCHRL claims against defendant Larrier.  Thus, dismissal is appropriate.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court issue an order granting Defendants' Motion to Dismiss and dismiss the Second Amended Complaint in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
       April 27, 2018

                               JAMES B. HENLY
                               Vice President & General Counsel
                               New York City Transit Authority

          By:                       

                               BYRON Z. ZINONOS

                               130 Livingston Street – 12th Floor
                               Brooklyn, New York 11201
                               (718) 694-3823
                               *Attorney for the Defendants*