USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3-28-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
TAMMY L. GREEN,

                     Plaintiff,

    -against-

NEW YORK CITY TRANSIT AUTHORITY and
ROOSEVELT I. LARRIER,

                     Defendants.
------------------------------------------------------------- x

15-CV-8204 (ALC)

<u>OPINION & ORDER</u>

ANDREW L. CARTER, JR., District Judge:

## SYLLABUS

Due to the nature of the allegations in this case, a brief summary of this Opinion is helpful. Plaintiff alleges a long and drawn out history of harassment and gender-based mistreatment. In her Second Amended Complaint, Ms. Tammy Green, a career Track Worker for the New York City Transit Authority, states that an affair with her supervisor sparked retaliatory activity that created a hostile work environment and adverse employment action. Specifically, Ms. Green alleges that she was sent unwarranted pornographic material, she was surveilled by her coworkers, she was physically touched and attacked, and had an axe swung at her head. Moreover, Ms. Green was called names, falsely accused of making bombs, and forced to endure constant and unwarranted sexual advances and remarks.

Plaintiff's claims span a period of years, some of them dating back to 2013. Her liberally construed Second Amended Complaint includes twenty-three causes of action, including age, race, gender, and disability discrimination, claims of sexual harassment and sexual violence, as well allegations of violations of the Equal Pay Act, Rehabilitation Act, and Whistleblower Protection Act, among other things. Defendants' Motion to Dismiss is **DENIED** as it relates to

COPIES MAILED

Plaintiff's gender-based discrimination claims, including retaliation and hostile work environment. At this stage, Plaintiff has alleged sufficient facts to support her claims that warrant discovery. Defendants' Motion is otherwise **GRANTED** for the reasons stated herein.

## INTRODUCTION

Plaintiff Tammy Green (hereinafter, "Plaintiff" or "Ms. Green") brings this action against Defendants New York City Transit Authority (hereinafter, "NYCTA") and Roosevelt I. Larrier (hereinafter, "Mr. Larrier") (collectively, "Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Rehabilitation Act of 1973 ("Rehabilitation Act"), the Americans with Disabilities Act of 1990 ("ADA"), the Equal Pay Act of 1683 ("EPA"), the Occupational Safety and Health Act ("OSHA"), the Whistleblower Protection Act ("WPA"), and Presidential Executive Order 11246 of 1965, among other things.[1]

Ms. Green filed her Complaint on October 16, 2015. ECF No. 2. She filed her Amended Complaint on February 23, 2016. ECF No. 14. On December 11, 2017, the Parties informed the Court that they had reached a settlement agreement. ECF No. 75. Ultimately, a settlement was not agreed upon, and Defendants moved for leave to file a motion to dismiss this case after Plaintiff filed her Second Amended Complaint. ECF Nos. 79-81. On April 27, 2018, Defendants filed their Motion to Dismiss, along with supporting documents. ECF Nos. 88-92. Plaintiff's Response to Defendants' Motion to Dismiss came via two letters, one filed on May 31, 2018, and another on June 6, 2018. ECF Nos. 95-96. Defendants filed their Reply to Plaintiff's

---

[1] Plaintiff asserts twenty-three causes of action in her Second Amended Complaint. ECF No. 79, p. 30-47. Many of the claims include less than "threadbare recitals" of a cause of action and are entirely unsupported by facts or allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). For the purpose of judicial efficiency, this Opinion addresses the claims Ms. Green's Complaint could be liberally construed to allege. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Response on June 21, 2018. ECF No. 99. Defendants' Motion is deemed fully briefed. After careful review, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Ms. Green has been employed by the NYCTA since June 27, 1994. Second Amended Complaint, at 17 (hereinafter, "SAC"). She has held titles such as Track Worker and Track Worker Specialist. *Id*. Plaintiff alleges that she began an affair with her supervisor, Mr. Larrier, in 2012. SAC, p. 41, at ¶ 5. During their relationship, Plaintiff alleges that Mr. Larrier would send obscene text messages and images, that he would take inappropriate pictures of her, and that he divulged the details of their relationship to Ms. Green's co-workers. *Id*. at ¶¶ 7-9. This led to co-workers making comments to her, including one instance where a co-worker called her a "cheap-bitch." *Id*. at ¶¶ 9-10. As Ms. Green's relationship with Mr. Larrier began to sour, Mr. Larrier allegedly began to "buckle" Plaintiff's knees or "body check" her as she was walking into work. *Id*. at ¶¶ 10-11. Additionally, Mr. Larrier sent Plaintiff a total of fourteen text messages containing sexually graphic images and propositions between November 5, 2013 and June 24, 2014. *Id*. pp. 20-22. Plaintiff further alleges that at an unspecified point in time, Mr. Larrier told fellow employees and NYCTA personnel that Ms. Green gave him a sexually transmitted disease. *Id*. pp. 18; 24 at ¶ 21. Ms. Green claims that all of this was done in an effort to shame, embarrass, and humiliate her in front of her co-workers with the ultimate goal of forcing her to quit or be fired. *Id*. Plaintiff then requested a new work placement, which also signified the end of her relationship with Mr. Larrier. *Id*. p. 42 at ¶ 13.

Plaintiff alleges that following the end of her relationship with Mr. Larrier she was "skipped" over for opportunities to work overtime. *Id*. pp. 19; 42 at ¶ 14. Furthermore, Plaintiff endured a string of harassing conduct including unidentified individuals tampering with her car,

phone, work equipment, and other personal belongings following her breakup with Mr. Larrier. *Id.* pp. 25-26; 42 at ¶¶ 15, 18-19; 43 at ¶ 26. In the summer of 2014, unidentified co-workers accused Plaintiff of trying to poison them, accused plaintiff of "being a terrorist ... carrying a bomb, and spreading anthrax," accused plaintiff of selling drugs, and Charles Armstrong accused Plaintiff of being "bi-polar and difficult to work with." *Id.* pp 19; 22; 24-25; 42 at ¶¶ 16, 20. Plaintiff further alleges that she was surveilled at work. *Id.* pp. 19; 23; 32. In addition, Plaintiff claims that she was approached and touched by coworkers in threatening and inappropriate ways thus requiring her to "call out sick to avoid them." *Id.* pp. 23; 42 at ¶ 20.

On July 12, 2015, Plaintiff alleges that "Levy was swinging [an] AX (sic) in a repeated back & forth motion at the back of my head." *Id.* pp. 14; 24; 42 at ¶ 17.[2] On July 21, 2015, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire. Zinonos Decl. Ex. B, ECF No. 90. Plaintiff claimed that she was discriminated against on the basis of her race, sex, age, and disability. *Id.* at 2. She further stated that she was retaliated against, providing the axe incident with Levy as the discriminatory and retaliatory conduct. *Id.* Plaintiff stated that she felt that the axe incident "was a form of harassment to force me to leave my current job title." *Id.* When asked to identify a reason for the alleged discriminatory act, Plaintiff stated that she knew of "none" other than "maybe b/c I was too slow at my job & because of other statements made to harass me to force me to leave." *Id.* The EEOC issued a Dismissal and Notice of Right to Sue letter on September 16, 2015. *See* EEOC Notice of Rights Letter, SAC, p. 16.

---

[2] On page 42 of her Second Amended Complaint, Plaintiff alleges that the axe incident occurred in the summer of 2014. However, page 14 of the Second Amended Complaint as well as her EEOC Intake Questionnaire (Ex. B) both contain allegations that the axe incident occurred on July 12, 2015.

4

After receiving her EEOC Notice of Rights Letter, Plaintiff alleges that a co-worker named Payton inappropriately touched her while she was signing into work on October 4, 2015. SAC, p. 15; 24. Plaintiff filed this action on October 16, 2015. ECF No. 1. On an unspecified date in 2017, Plaintiff's co-worker Nankoo confronted Plaintiff with lewd and aggressive sexual remarks and advances. SAC, p. 23; 43 at ¶ 23. Roughly a month after that, a driver at "another job site" named Wheeler inappropriately propositioned Plaintiff. *Id.* pp. 23-24; 43 at ¶ 24. In a separate incident, Plaintiff claims that Donald Angel "touched my legs in the truck and made me feel incredibly uncomfortable and demeaned." *Id.* pp.24; 43 at ¶ 25.

Plaintiff's SAC further alleges that she was told that women were not suited for the type of work she was doing. *Id.* p. 43 at ¶ 29. Additionally, Luis Rodriguez, one of her supervisors, called Ms. Green a "bitch" on "several occasions" as well as sent her to "asbestos jobs" without giving her the opportunity to bring the proper equipment. *Id.* pp. 28; 43 at ¶¶ 30-31. When Plaintiff complained about working asbestos jobs due to her pregnancy, she was later reprimanded for her complaints. *Id.* Plaintiff adds that Mr. Rodriguez did not know she was pregnant at the time. *Id.* Ms. Green also alleges that "hours were being shorted from her check" by Luis Medina. *Id.* p. 29. Moreover, according to Plaintiff, she had been using soap at the NYCTA that contained a known carcinogen that has been "found to disrupt the endocrone (sic) system in women." *Id.* p. 33.

Plaintiff's final claim alleges that she was recently denied a promotion to the title of Power Distribution Maintainer. *Id.* p. 44 at ¶ 33. She claims that she was denied the promotion because she had neck surgery, so she missed some time. *Id.* Further, Plaintiff had been taking days off because she "did not feel comfortable going into work." *Id.*

5

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

Taking the standard into consideration, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In particular, the pleadings of a *pro se* plaintiff should be interpreted to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotations and citations omitted).

## DISCUSSION

In their Motion to Dismiss, Defendants request that the Court take judicial notice of Plaintiff's EEOC Commission Intake Questionnaire (hereinafter, "Intake Questionnaire"). It is within this Court's discretion to incorporate documents referenced in a complaint as well as to take judicial notice of public documents when deciding a motion to dismiss. Fed. R. Evid. 201. In order for a document to be incorporated by reference, "a clear, definite and substantial reference to the documents" must be made in the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). Specifically, a plaintiff "must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Id.* (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations omitted). A court may take judicial notice of public filings, but it does so "not for the truth of the matters asserted ... but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Here, Plaintiff included the EEOC Dismissal and Notice of Rights Letter in her Amended Complaint. SAC, p. 16. She did not, however, include the Intake Questionnaire, even though part of Plaintiff's retaliation claim rests on events occurring after the filing of her EEOC complaint. SAC, p. 23 ("Since the filing of my complaint to EEOC I have been followed to the point where it makes me very nervous, uncomfortable and I'm always looking over my shoulder.") Due to Plaintiff's actual notice and reliance on the Intake Questionnaire, it will be incorporated by reference into the Complaint.

### I. Plaintiff's Discrimination Claims That Occurred Before September 24, 2014 Are Time Barred

As a preliminary matter, before an individual brings a Title VII suit in federal court, they must first "present the claims forming the basis of such a suit" to the EEOC or another state

agency with similar functions. 42 U.S.C. § 20000e-5 (2000); *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (citing *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006)) (internal quotations omitted). Additionally, the EEOC filing must be made "within 300 days of the alleged discriminatory conduct" and the claimant must receive a "Notice of Right to Sue" letter from the EEOC before bringing the suit. *Williams*, 458 F.3d at 69 (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)).

Here, Plaintiff filed her complaint with the EEOC on July 21, 2015.[3] *See* EEOC Intake Questionnaire. The 300-day window of viability for Ms. Green's claims began on September 24, 2014. Thus, in accordance with 42 U.S.C. § 2000e-5, Plaintiff's discrimination claims that occurred prior to September 24, 2014 are time-barred.

## II. Plaintiff's Has Stated Sufficient Facts to Support Her Gender-Based Discrimination Claims

For the discrimination claims arising after September 24, 2014, Plaintiff has alleged facts sufficient to support a claim for which relief can be granted. To state a valid Title VII employment discrimination claim, "a plaintiff must plausibly allege that (1) the employer took adverse action against [them] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). She may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir.

---

[3] Defendants claim that Plaintiff has failed to exhaust her claims because the facts alleged in the EEOC do not include the facts alleged in the SAC. Defs' Mem. Supp. Mot. p. 17. Namely, Plaintiff's EEOC Complaint cites only to the axe swinging incident as the source of gender, race, and sex discrimination. Intake Questionnaire. Claims that are not exhausted may be included in a subsequent lawsuit if they are reasonable related to those claims that were exhausted with the EEOC. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). Here, Plaintiff's Complaint can be liberally construed to be reasonably related to her allegations in the EEOC complaint. Thus, at this stage in the litigation, Plaintiff has exhausted her administrative remedies.

8

2015)). Regarding a plaintiff's burden, courts are to "be mindful of the elusive nature of intentional discrimination" because "clever men may easily conceal their motivations." *Id.* at 86 (citing *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir. 1979)). A plaintiff may rely on "bits and pieces" of evidence to create a "mosaic" of intentional discrimination. *Id.* (quoting *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998)).

Here, Plaintiff's allegation that she suffered from gender discrimination are sufficient. Ms. Green alleges that she was inappropriately touched on numerous occasions, that she experienced unwarranted sexual advances and comments, and that she was called names, told that women were not suited for her work environment, and accused of spreading sexually transmitted diseases. SAC, pp. 7-11, 18; 24 at ¶ 12; 43 at ¶ 29. Plaintiff alleges that all of this was done in an effort to shame, embarrass, and humiliate her in front of her co-workers, and the ultimate goal of the discrimination was to force her to quit her job or to be fired. *See id.* The inappropriate conduct was accompanied by asbestos job assignments without proper notice and the denial of a promotion to a Power Distribution Maintainer. *Id.*, pp. 28; 43 at ¶¶ 30-31; 44 at ¶ 33. Interpreted liberally, Plaintiff's SAC has sufficiently stated a claim for gender discrimination.

### a. Hostile Work Environment

For a hostile work environment claim to survive a motion to dismiss, a plaintiff "must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)). The test has both a subjective and objective component. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). A plaintiff must plead facts that would tend to show

that the complained of conduct: "(1) is objectively severe or pervasive ... [or] creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Id.* Courts are to consider the totality of the circumstances when assessing the hostility of the environment. *Id.* (citing *Harris v. Forklift Sys., Inc.*, 5010 U.S. 17, 21 (1993)). Some relevant factors include (1) the frequency of the discriminatory conduct, (2) the severity of the conduct, (3) whether it is threatening, humiliating, or merely an offensive utterance, and (4) whether it unreasonable interferes with an employee's work performance. *Id.*

Here, Plaintiff's allegations rise to the level of severe and pervasive conduct sufficient to "alter the conditions of [Ms. Green's] employment and create an abusive working environment." *Duplan,* 888 F.3d at 626. As stated, Plaintiff's SAC alleges rampant sexual harassment consisting of sexual advances, request for sexual favors, and conduct of a physical nature. *See Redd v. New York Div. of Parole*, 678 F.3d 166, 174-75 (2d Cir. 2012). *See* SAC. Plaintiff also indicated that she missed days at work because she "did not feel comfortable" going into the office. SAC p. 44 at ¶ 33. Although the dates in the SAC are sparse, Plaintiff has plausibly alleged an uninterrupted chain of hostility sufficient to support her claim. Thus, Defendants' Motion to Dismiss is denied as to Plaintiff's hostile work environment claim.

### b. Retaliation

For a Title VII retaliation claim to survive a motion to dismiss, a plaintiff must plausibly allege two things: (1) that defendants discriminated or took adverse employment action against her (2) because she opposed any unlawful employment practice. *See Vega,* 801 F.3d at 90; 42 U.S.C. § 2000e-3(a). A plaintiff "must plausibly plead a connection between the act and [her] engagement in protected activity." *Id.* Additionally, a plaintiff "must plausibly allege that the

retaliation was a "but-for" cause of the employer's adverse action." *Id.* at 90-91; (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).[4] In other words, a plaintiff must show that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91; (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). "[P]laintiff is required to have had good faith, reasonable belief that she was opposing an employment practice made unlawful by Title VII." *Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 16 (2d Cir. 2013).

Here Plaintiff alleges that she was retaliated against for filing her Complaint with the EEOC, for "speaking out against drinking," and for having an affair with Defendant Larrier. SAC pp. 18, 23, 29; 44 at ¶ 32. At numerous points in her SAC Plaintiff indicates that all the mistreatment she endured was aimed at getting her fired or forcing her to leave her employment. *Id.* pp. 18; 24 at ¶ 21. Plaintiff alleges that she was physically and verbally retaliated against, as well as retaliated against by being sent to unfavorable job sites and being denied a promotion. *See id.* In addition, Plaintiff alleges that the retaliation continued after she filed her complaint with the EEOC. *Id.* p. 23. Interpreted liberally, Plaintiff sufficiently alleges retaliation in violation of Title VII. Thus, Defendants' Motion is denied as to Plaintiff's retaliation claims.

### III. Plaintiff has Failed To State A Claim for Which Relief Can be Granted on Her Age, Disability, and Race Discrimination Claims

To state a valid ADEA claim, a plaintiff "must prove that age was the "but-for" cause of the employer's adverse decision." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009); *see also Vega*, 801 F.3d at 86 (indicating that the pleading standard for an ADEA claim is higher than it is for a discrimination claim based on race, color, religion, sex, or national origin). The

---

[4] Note that this is a different standard than the "substantial" or "motivating" factor standard applied to Title VII discrimination claims. *See Vega*, 801 F.3d at 90-91.

11

ADA prohibits an employer from discriminating against an employee because of a disability and requires that an employer make "reasonable accommodations" to the known limitations of the qualified individual. 42 U.S.C. 12112(a). The Rehabilitation Act is similar to the ADA in that it prohibits disability-based discrimination by government agencies and other recipients of federal funding. 29 U.S.C. § 794(a); *see Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1514-15 (2d Cir. 1995). Under both the ADA and the Rehabilitation Act, a plaintiff can state a claim for discrimination by demonstrating four things: (1) that the employer was subject to the statute under which claim was brought; (2) that she is an individual with a disability within meaning of the statute in question; (3) that, with or without reasonable accommodation, she could perform essential functions of job; (4) and that an employer had notice of plaintiff's disability and failed to provide such accommodations. *See Lyons*, 68 F.3d at 1515. Regarding race-based discrimination, the standard utilized is the same as it is in the context of gender-based discrimination as outlined above.[5]

Plaintiff's allegations pertaining to age, disability, and race are insufficient. At no point in her SAC does Plaintiff make any mention of her age or indicate that her age was the "but for" cause of any adverse employment action. *See* SAC. Additionally, aside from a few scattered references to bi-polar disorder, Ms. Green's SAC does not indicate how any disability impacted her or what accommodations she needed and was not provided. *Id.* p. 4. Furthermore, Ms. Green fails to allege how she was discriminated against on the basis of her race. *See id.* Ms. Green states that she is "African American strong willed & very opinionated," but fails to indicate how

---

[5] To state a valid Title VII employment discrimination claim, "a plaintiff must plausibly allege that (1) the employer took adverse action against [them] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega.*, 801 F.3d at 86.

her race was a motivating factor in any adverse employment action. Thus, Plaintiff's age, disability, and race-based discrimination claims are dismissed.

IV. **Plaintiff has Failed To State A Claim For Which Relief Can Be Granted On Multiple Other Claims**

   a. **Equal Pay Act**

In 1963, Congress passed the EPA in an effort "to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work." *E.E.O.C. v. Port Authority of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)). In an effort to rewrite social norms, the EPA prohibits employers from discriminating against employees on the basis of sex by "paying wages ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions ..." 29 U.S.C. § 206(d)(1). In order to allege a violation of the EPA, a plaintiff must demonstrate three things: (1) that the employer pays different wages to employees of the opposite sex; (2) that the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) that the jobs are performed under similar working conditions. *See Port Authority*, 768 F.3d at 254-55 (citing *Belfi*, 191 F.3d at 135).

Here, Plaintiff has failed to allege facts sufficient to support her claim under the EPA. The extent of the relevant allegations in Plaintiff's Complaint consist of denial of overtime opportunities, "hours ... being shorted," and a dispute about how and when Plaintiff signed out of work. SAC, pp. 19, 29-30; 42 at ¶ 14. Any remaining statements that could be liberally construed to relate to an EPA claim consist exclusively of "rumor[s]" and unsubstantiated feelings. *Id.* p. 29. At no time does Ms. Green allege that she was paid different wages than men

for equal work requiring equal skill, effort, and responsibility under similar conditions. Therefore, Ms. Green's EPA claims are dismissed for failure to allege sufficient facts capable of sustaining such a claim.

### b. Fair Labor Standards Act

Although not specifically alleged, a liberal reading of Plaintiff's Complaint could lead one to identify allegations that might give rise to a claim under the FLSA. In 1938, Congress passed the FLSA to ensure fair labor standards that would protect the general well-being of workers. 29 U.S.C. § 201. In regards to overtime work, "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate which he is employed." 29 U.S.C. § 207(a)(1). In order to allege an FLSA violation, a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health System of Long Is., Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Moreover, Plaintiff must plead "particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *DeJesus v. HF Management Services, LLC*, 726 F.3d 85, 89 (2d Cir. 2013); *see Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013). While "mathematical precision" is not required, Plaintiffs are required to utilize their "memory and experience" in constructing their claim to demonstrate a denial of overtime pay in violation of the FLSA. *DeJesus*, 726 F.3d at 90.

Here, Ms. Green has failed to allege with specificity that she worked over forty hours in any given work week. Additionally, she has failed to allege that she was not compensated for any overtime she did work. Ms. Green's only allegations pertaining to overtime suggest that at some

14

point she was passed over for overtime assignments or misled into thinking that she did not have overtime assignments when she actually did. SAC, p. 19. At no point does Plaintiff connect the allegation that her hours were shorted with any statements pertaining to overtime work. Therefore, Plaintiff has failed to allege a violation of FLSA with sufficiency and any FLSA claims are dismissed.

### c. Occupational Safety and Health Act

The purpose of OSHA is to assure "every working man and woman in the Nation safe and healthful working conditions ..." 29 U.S.C. § 651 *et seq*. While the Act is aimed at protecting employees, "employees have a limited role in the enforcement of the Act." *Donovan v. OSHRC*, 713. F.2d 918, 926 (2d Cir. 1983). Specifically, "employees do not have a private right of action." *Id*. (citing *Marshall v. OSHRC*, 636 F.2d 544, 550-51 (6th Cir. 1980)). While Plaintiff claims that NYCTA "violated her rights by still using a known carcinogen" contained in soap, Plaintiff does not have a private right of action to bring that claim. SAC, p. 33. Thus, Plaintiffs OSHA claims are dismissed.

### d. Whistleblower Protection Act

Among other things, the WPA prohibits an employer with the requisite power from taking or threatening to take adverse action against an employee for disclosing information that the employee reasonably believes indicates a violation of a law, rule, regulation, or policy, or for acting within their rights by filing an appeal, complaint, or grievance. 5 U.S.C. § 2302(b)(8)-(9). "The Civil Service Reform Act of 1978, as amended by the Whistleblower Act of 1989 ... governs claims for retaliation against whistleblowing activities brought by *federal* employees against *federal* employers." *Ghaly v. U.S. Department of Agriculture*, 228 F.Supp.2d 283, 288 (S.D.N.Y. 2002) (emphasis added). The NYCTA is a state entity that operates public

transportation in New York City. Thus, Plaintiff, who works for the NYCTA, is a state, rather than a federal, employee. Therefore, her claims under the WPA are dismissed.

### e. Executive Order 11246

Executive Order 11246 (hereinafter, the "Order") was promulgated in 1965 and "prohibits federal contractors from discriminating in employment on the basis of sex, race, color, religion, or national origin." *Pan American World Airways, Inc. v. Marshall*, 439 F.Supp. 487, 489 (S.D.N.Y. 1977). The Order "do[es] not give rise to a private cause of action. Rather, enforcement is limited to the Department of Labor." *McPartland v. American Broadcasting Companies, Inc.*, 623 F.Supp. 1334 1339-40 (S.D.N.Y. 1985) (citing *Pecorella v. Oak Orchard Community Health Center, Inc.*, 559 F.Supp. 147, 149 (W.D.N.Y. 1982), *aff'd* 722 F.2d 728 (2d Cir. 1983)). Therefore, Plaintiff's claims alleging a violation of the Order are dismissed.

## CONCLUSION

Defendants' Motion to Dismiss is hereby **GRANTED** as to Plaintiff's claims alleging race discrimination under Title VII, as well as violations of the ADEA, ADA, Rehabilitation Act, EPA, FLSA, OSHA, WPA, and Executive Order 11246. Defendants' Motion to Dismiss is hereby **DENIED** as to Plaintiff's gender-based discrimination claims.

**SO ORDERED.**

**Dated:** **March 28, 2019**
**New York, New York**

ANDREW L. CARTER, JR.
United States District Judge

