USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  9/21/2020

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TAMMY GREEN,** | |
| **Plaintiff,** | |
| **-v.-** | **15-CV-8204 (ALC)** |
| **NEW YORK CITY TRANSIT AUTHORITY and ROOSEVELT LARRIER,** | **OPINION & ORDER** |
| **Defendants** | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Tammy L. Green brings this action, *pro se*, against Defendants New York City Transit Authority ("NYCTA") and Roosevelt I. Larrier ("Larrier") alleging violations of Title VII, NYSHRL, NYCHRL, the ADA, the ADEA, Rehabilitation Act, EPA, FLSA, OSHA, WPA, and Executive order 11246. This Court previously dismissed all but Plaintiff's gender-based discrimination claims, which include her retaliation and hostile work environment claims. *See* ECF No. 101. After discovery, Defendants filed the instant motion for summary judgment. For the reasons set forth below, Defendants' motion is **GRANTED** in part and **DENIED** in part.

## INTRODUCTION

Plaintiff alleges rampant sexual harassment and gender-based mistreatment while working for the New York City Transit Authority. The harassment largely began after her relationship with her supervisor, Defendant Larrier, soured. Over the course of several years, Plaintiff was verbally insulted, physically intimidated and harassed, inappropriately touched by multiple co-workers, received propositions for sex and unwanted pornographic text messages, and had an axe swung at her head. Based on some of this conduct, Plaintiff filed a complaint with the EEOC and subsequently filed this lawsuit. The Court grants summary judgment on Plaintiff's hostile work

environment claim under Title VII and NYSHRL pursuant to the *Faragher/Ellerth* defense, but denies summary judgment on this claim under NYCHRL because a reasonable jury could render a verdict in Plaintiff's favor and because there are genuine, disputed, material facts as to Plaintiff's allegations.  The Court grants summary judgment on Plaintiff's gender discrimination claims under Title VII and NYSHRL and Plaintiff's retaliation claims under Title VII, NYSHRL, and NYCHRL because, although she alleges a serious and troubling pattern of sexual harassment, any adverse employment actions she suffered were the result of legitimate, nondiscriminatory reasons.  Given the more liberal burden of proof under the NYCHRL, Plaintiff's NYCHRL gender discrimination claim survives.

## BACKGROUND

### I.    Factual Background

The following factual summary is taken from Defendants' Rule 56.1 Statement, *see* ECF No. 138, and Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment, *see* ECF No. 143.[1]  Where the facts are subject to legitimate dispute, they are construed in favor of

---

[1] Plaintiff did not adhere to Local Rule 56.1, which requires that "papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each number paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." LOCAL CIV. R. 56.1(a).  Local Rule 56.2 requires that "[a]ny represented party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion, the following 'Notice To Pro Se Litigant Who Opposes a Motion for Summary Judgment' with the full texts of Fed. R. Civ. P. 56 and Local Civil Rule 56.1 attached." LOCAL CIV. R. 56.2.  Defendants adhered to this notice requirement. *See* ECF No. 132.

If notice is sufficiently provided pursuant to Local Civil Rule 56.2, "[p]*ro se* litigants are then not excused from meeting the requirements of Local Rule 56.1." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citing *Vt. Teddy Bear Co. v. 1–800–BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004)).  Moreover, "[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. New York City Dept. of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).  However,

Plaintiff as the non-moving party. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). Plaintiff does not recall the identities of some of the employees who harassed her or the specific times that the incidents occurred. To the extent possible, the Court takes facts and dates from Plaintiff's deposition, employment records, or other documents in the record.

Plaintiff started working as a Track Worker for the NYCTA on June 27, 1994. *See* Defendants' Undisputed Material Facts (ECF No. 138) ("UMF") at ¶24. From March 29, 2004 until June 12, 2012, Plaintiff worked as a Dual Rate Crane Operator. *Id.* at ¶63. Plaintiff then selected a job as a Dual Rate Specialist Operator at East 180th Street ("180th Street Station") and held this position from June 13, 2012 until May 2014. *Id.* at ¶¶ 73–74. During this time, Roosevelt Larrier was one of her supervisors. *Id.* at ¶75. Plaintiff alleges that she had a consensual affair

---

"where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali*, 678 F. Supp. 2d at 178 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). Moreover, "[w]here, as here, plaintiff has failed to submit any facts in opposition to defendant's motion for summary judgment, this Court 'must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.'" *Brandever v. Port Imperial Ferry Corp.*, 13-CV-2813, 2014 WL 1053774, at *2 (S.D.N.Y. Mar. 13, 2014) (citing *Vermont Teddy Bear Co., Inc.*, 373 F.3d at 244). Indeed, even when a *pro se* plaintiff fails to file a Local Rule 56.1 statement, if "the record does not support the asserts in [the moving parties'] Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently." *Holtz*, 258 F.3d at 74.

Accordingly, the Court considers Plaintiff's arguments in her Motion in Opposition to the extent they are supported by evidentiary submissions. However, to the extent assertions by Plaintiff "either do not contain citations to the record, or are not supported by the citations in the record," the Court "disregards all such assertions." *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 503 (S.D.N.Y. 2015). Finally, the Court notes that where a *pro se* plaintiff "verifie[s] his complaint by attesting under penalty of perjury that the statements in the complaint [are] true to the best of his knowledge," then the "verified complaint is to be treated as an affidavit for summary judgment purposes." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). "Therefore, the Court will accept for purposes of this Motion all admissible facts set forth in Plaintiff's Complaint that are based on Plaintiff's personal knowledge and about which Plaintiff is competent to testify." *Parker v. Fantasia*, 425 F. Supp. 3d 171, 176 (S.D.N.Y. 2019).

with Larrier during which they communicated regularly by text and phone messages, drove each other to work, had consensual sexual intercourse, and bought each other gifts. *Id.* at ¶¶81–83.

Plaintiff alleges that as her relationship with Larrier soured and eventually ended, she experienced a wide range of harassment. Larrier divulged the details of their relationship to Plaintiff's co-workers, which led to them calling her names including "cheap-bitch," "lazy," "dumb," and "slow." *See* Second Amended Complaint ("SAC") (ECF No. 79) at 41; UMF at ¶142. Larrier would "buckle" Plaintiff's knees or "body check" her as she walked to work; he sent her fourteen pornographic images, some of which were unwanted, between November 5, 2013 and June 24, 2014; he propositioned her for sex multiple times; he put his hands in her face; he incorrectly told co-workers that she gave him a sexually transmitted disease; and he made "constant threats of physical intimidation." UMF at ¶¶ 102–03, 106; SAC at 42. Plaintiff was also harassed by unidentified co-workers who tampered with her car, phone, work equipment, and other personal belongings; who accused Plaintiff of trying to poison them, of being a terrorist, and of selling drugs; who discussed the topic of a sex club with her; and who told her that women do not do "this type of work." SAC at 41–43; UMF at ¶¶109–120, 131–135, 145.

In May 2014, Plaintiff left her assignment at East 180th Street and picked an assignment at Corona Yard, signaling the end of her relationship with Larrier. *Id.* at ¶86. Plaintiff made this switch in part because of the harassment she faced after her relationship with Larrier soured. *See* Plaintiff's Deposition (ECF No. 133-4) ("Pl. Depo.") at 103–04 ("Then after that I just figured let me just get out of here and I just picked another assignment totally away from 180th Street. It was out of my way actually, but I figured it would give us the distance. He wouldn't be my immediate supervisor and I had a chance to kind of, you know, start fresh."). Plaintiff worked at Corona Yard from May 20, 2014 until September 2018. *Id.* at ¶121. During this time, she alleges that she was

inappropriately passed over for overtime pay, *id.* at ¶116, and was turned down for a promotion to Power Distribution Maintainer in both 2015 and 2017, *id.* at ¶¶225–26.  Plaintiff also alleges that she was denied personal protective equipment for work, was put in dangerous situations including working in the dark without overhead lights, and was denied equal opportunities and adequate training. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp.") (ECF No. 143) at 5–7.[2]

On July 12, 2015 a co-worker named "Levy" swung an axe back and forth in front of Plaintiff's head and face several times. SAC at 14, 42; *see also* Pl. Opp. at 4.  As he did, Defendant Larrier was "at the front entrance of the gate" and said "it's just a matter of time," which Plaintiff took to mean that "it is just a matter of time before he would be rid of [Plaintiff] or [Plaintiff] would just quit." Pl. Opp. at 4.  Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") on July 21, 2015. *See* U.S. Equal Employment Opportunity Commission Intake Questionnaire, Exhibit H ("EEOC Complaint") (ECF No. 133-10). She wrote that she had "a fellow track worker swing an axe at the back of my head several times . . . maybe because I was too slow at my job or because of other statements made to harass me to force me to leave." *Id.* at ¶¶ 7–8.  The EEOC conducted an investigation and issued a Dismissal and Notice of Right to Sue on September 16, 2015. *See* Dismissal and Notice of Rights (ECF No. 133-9).  Plaintiff filed this action on October 16, 2015. ECF No. 1.

Even after filing her EEOC Complaint and this lawsuit, the harassment continued.  Co-workers "Peyton" and Clipper Angel both inappropriately touched Plaintiff's leg. *Id.* at ¶¶155–

---

[2] Plaintiff raises some of these allegations for the first time in her opposition brief.  Since it is well established that "[a] complaint cannot be amended merely by raising new facts and theories in [a plaintiff's] opposition papers," the Court does not consider these allegations for purposes of this motion. *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-CV-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004).

156, 163.  One of Plaintiff's supervisors, "Nankoo," told Plaintiff "you're not going to want any more black ding-a-ling once you get some of this Indian ding-a-ling." *Id.* at ¶166.  Her co-worker "Wheeler" asked her to be his "fifth girlfriend." *Id.* at ¶170.  Finally, Plaintiff alleges that she was videotaped on the job "to keep a record file of how I'm performing my job and how I'm not performing it the way the policies and procedures is supposed to be done." *Id.* at ¶154.

On July 20, 2017, after filing this suit, Plaintiff called in sick from work because she was stressed due to "harassment, discrimination from NYCTA employees, supervision and managers." UMF at ¶180.  When she returned, an on-the-job injury report was filed and she wrote a statement explaining that she was missing a safety harness and that when she reported to a new location she noticed "a Superintendent and an MSII taking pictures of her and snickering." *Id.* at ¶182–83. Plaintiff filed a police report about the missing safety harness. *Id.* at ¶185.  The matter was referred to the Transit Authority's Department of Equal Employment Opportunity & Diversity ("EEOD"), which investigated the issue and after multiple unfruitful attempts to contact and meet with Plaintiff, closed the case. *Id.* at ¶¶188–203.  In September 2018, Plaintiff picked an assignment in the 38th Street Yard where she continues to work. *Id.* at ¶204.

Aside from the EEOC Intake Questionnaire Plaintiff filed on July 21, 2015 and the July 20, 2017 complaint, Plaintiff did not report any of the alleged harassment to the Transit Authority. *Id.* at ¶ 211.  Plaintiff also did not complain to the Transport Workers Union, Local 100 ("TWO") of which she is a member, even though the union can handle day-to-day issues involving its members, including work conflicts with co-workers. *Id.* at ¶50–52.  Plaintiff was suspended for one-day in 2017 for being absent without authorization and was suspended for three days in 2018 for similar violations. *Id.* at ¶¶231–235.  These suspensions were pursuant to the Transit Authority's Policy, which states that: "If an employee reports late for duty, he/she will be penalized

for his/her tardiness and he/she may not be permitted to work on that day." *Id.* at ¶230.  For both the 2017 and 2018 suspensions, Plaintiff accepted the suspension and lost pay as part of a signed stipulation and settlement of the disciplinary charges. *Id.* at ¶¶232, 235.  Aside from these suspensions, "Plaintiff has not been the subject of any other discipline, reduction in pay, or demotion." *Id.* at ¶236.

## II.     Procedural Background

Plaintiff filed her Intake Questionnaire with the EEOC on July 21, 2015 and received a Dismissal and Notice of Right to Sue letter on September 16, 2015.  Plaintiff filed this action and a request to proceed *in forma pauperis* on October 16, 2015. ECF No. 1–2.  The Court granted Plaintiff's request on October 21, 2015, ECF No. 3., and referred the case for mediation on January 5, 2016, ECF No. 6.  Plaintiff filed an Amended Complaint on February 23, 2016, ECF No. 14, and with leave of the Court, filed a Second Amended Complaint on February 13, 2018, ECF No. 79.  After limited discovery and settlement discussions, Defendants were granted leave to file a motion to dismiss Plaintiff's second amended complaint. ECF No. 85.  This Court issued an Opinion & Order on March 28, 2019 granting in part and denying in part Defendants' motion to dismiss. *See* Opinion & Order (ECF No. 101).  Specifically, the Court granted Defendants' motion as to most of Plaintiff's twenty-three causes of action, but denied the motion as to Plaintiff's gender-based discrimination claims, including retaliation and hostile work environment. *Id.*

Discovery closed on October 15, 2019. ECF No. 124.  Defendants filed the instant motion for summary judgment on January 13, 2020. ECF Nos. 131–38.  Plaintiff filed a motion to amend her complaint and a motion in opposition to Defendants' motion for summary judgment on April 2, 2020. ECF No. 143.  Defendants filed a reply on May 1, 2020. ECF No. 146.  The Court denied

Plaintiff's motion to amend her complaint on May 7, 2020 and deemed Defendants' motion fully briefed and ready for consideration. ECF No. 148.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and "the moving party is entitled to a judgment as a matter of law.*" Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* FED. R. CIV. P. 56(a). Material facts are facts that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. An issue of fact is "genuine" when a reasonable fact finder can render a verdict in the nonmoving party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (quotation marks omitted). "[T]he court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Marvel Characters v. Simon*, 310 F.3d 280, 285–86 (2d Cir. 2002)). If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14-CV-7354, 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016) (citation omitted); *see also* FED. R. CIV. P. 56(c). The non-moving party "may not rest upon mere allegation[s] or denials of his pleadings," *Anderson*, 477 U.S. at 259. Rather, the non-moving party must "designate specific facts showing that there is a genuine

issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and these facts must be "admissible in evidence." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (quoting FED. R. CIV. P. 56(e)). "The mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment," *Anderson*, 477 U.S. at 247 (emphasis in original), and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 50 (internal citations omitted).

## DISCUSSION

Plaintiff alleges gender discrimination, hostile work environment, and retaliation claims against Defendants pursuant to Title VII, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").

### I.   Hostile Work Environment Claims

#### A.   Procedural Requirements: Timeliness and Exhaustion

The Court first addresses the timeliness of Plaintiff's claims and whether she exhausted her administrative remedies. Because Plaintiff alleges a "continuing violation" of her rights, the Court may consider her allegations that fall outside the 300-day window of availability for her Title VII claims. Additionally, because the harassment that occurred before Plaintiff filed her EEOC Complaint is "reasonably related" to the claims in her EEOC Complaint, she exhausted her administrative remedies for these allegations.

##### i.   Time-Barred Claims

"[A] Title VII plaintiff generally must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (quoting 42 U.S.C. §

9

2000e-5(e)(1)).  Plaintiff filed her complaint with the EEOC on July 21, 2015.  Accordingly, the discrimination claims that occurred before September 24, 2014 (i.e., 300 days before Plaintiff filed her EEOC complaint) are time-barred.  *See* Opinion & Order (ECF No. 101) ("The 300-day window of viability for Ms. Green's claims began on September 24, 2014.  Thus, in accordance with 42 U.S.C. § 2000e-5, Plaintiff's discrimination claims that occurred prior to September 24, 2014 are time-barred.").  However, the Court may consider these time-barred claims pursuant to the "continuing violation" doctrine.

Under the "continuing violation" doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 156 (2d Cir. 2012) (citation and quotation marks omitted).  However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("*Morgan*").  Discrete acts can include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114.  "Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct." *Id.* at 115.  Indeed "[p]rovided that *an* act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117; *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful

employment practice *and at least one act falls within the time period.*") (alterations in original) (quoting *Morgan*, 536 U.S. at 122).[3]

Plaintiff's claims establish a pattern of harassment—including inappropriate touching, comments, and physical harassment—that occurred over the course of several years after her affair with Defendant Larrier.  As discussed in further detail below, much of this harassment was connected to, and a product of, Plaintiff's affair with Defendant Larrier—including Plaintiff being called a "cheap bitch," rumors spreading about her having given Larrier a sexually transmitted disease, pervasive physical intimidation by Larrier, and unwanted pornographic text messages. Moreover, at least one act contributing to the hostile work environment, namely the axe-incident, fell within the filing period.  Accordingly, the Court considers Plaintiff's discrimination claims that occurred before September 24, 2014 for purposes of her hostile work environment claim because she sufficiently alleges a "continuing violation" of her rights.[4]

  ii.  **Exhaustion**

---

[3] Moreover, even if Plaintiff's time-barred allegations are "discrete acts" that fall outside the purview of the "continuing violation" doctrine, the Court could consider evidence of these allegations as background to any alleged conduct that falls within the limitations period. *See Toussaint v. City of New York*, 19-CV-1239, 2020 WL 3975472, at *2 (S.D.N.Y. July 14, 2020) ("Of course, even where the continuing violations doctrine does not apply, the Court may still consider 'background evidence from outside the limitations period.'") (quoting *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 146 (2d Cir. 2012)); *see also Sooroojballie v. Port Auth. of New York & New Jersey*, 2020 WL 2988851, at *4 n.5 (2d Cir. June 4, 2020) ("In any event, to the extent that any of this time-barred evidence could be construed as a discrete act of discrimination outside the scope of the continuing violation doctrine, the district court correctly determined that such evidence is admissible as background to the acts that fall within the limitations period.").

[4] Some of the conduct that occurred before September 24, 2014 does not fall within the continuing violation timeframe.  For example, Plaintiff alleges that her supervisor Rodriguez called her "bitch" in front of other employees and sent her to an "asbestos" job while she was pregnant. UMF at ¶¶64–69.  Since these events occurred well before 2014, and since they are not related to Plaintiff's affair with Larrier, the Court considers these claims time-barred. *Id.*

"It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015).  "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Id.* (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)).  The exhaustion requirement is "an essential element" of a Title VII claim, *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006), and applies with equal force to *pro se* plaintiffs. *Fowlkes*, 790 F.3d at 384.  "Claims not raised in an EEOC complaint, however, may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams*, 458 F.3d at 70 (citation omitted).  A claim is reasonable related to an EEOC claim if (1) "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made," *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003) (quotation marks omitted); (2) the EEOC complaint alleged "retaliation by an employer against an employee for filing an EEOC charge," *Fowlkes*, 790 F.3d at 386; or (3) "the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge," *id.* at 386–87.

In her EEOC Complaint, Plaintiff alleges that on July 12, 2015, "while performing my work duties I had a fellow trackworker swing an axe at the back of my head several time[s]." EEOC Complaint at 2.  When asked why that action was discriminatory, Plaintiff responded that "it was a form of harassment to force me to leave my current job title." *Id.*  Plaintiff claims that, at the time "Levy" swung the axe at her, Defendant Larrier was "at the front entrance of the gate" and said "it's just a matter of time," which Plaintiff took to mean that "it is just a matter of time before he would be rid of [Plaintiff] or [Plaintiff] would just quit." Pl. Opp. at 4.  When Plaintiff filed her EEOC Complaint, she showed the sexually explicit text messages Larrier sent her to the

EEOC investigator because she "felt that was tied to the case itself," UMF at ¶96.  Indeed, the EEOC investigator made the following note about Plaintiff's Complaint in her file: "[Plaintiff] came to this agency to complaint [sic] that in 2013 she had an affair with her boss. On July 12, 2015 a co-worker swung an axe around her head after he found out about the affair." Memorandum, Exhibit H (ECF No. 133-10) at 11.

Defendant Larrier's conduct—and much of the alleged harassment by Plaintiff's co-workers after her relationship with Larrier soured—are "reasonably related" to Plaintiff's EEOC Complaint because they would fall within the scope of the EEOC investigation.  "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin*, 335 F.3d at 201 (citation and quotation marks omitted).  Although Plaintiff did not write about Larrier or the harassment she faced from other co-workers in her EEOC Complaint, she showed the EEOC investigator the unwanted, sexually explicit text messages from Larrier and alleged that "Levy" swung the axe at her "after he found out about the affair." EEOC Memorandum (ECF No. 133-10) at 11.  Given that Plaintiff filed her EEOC Complaint without the benefit of counsel, she told the EEOC investigator about her affair with Larrier and his subsequent harassment of her, and she connected the axe incident to her affair with Larrier, the EEOC Complaint was sufficient to give the agency adequate notice about the harassment Plaintiff was facing from Larrier and her co-workers. *See Williams*, 458 F. 3d at 70 ("The central question is whether the complaint filed with the EEOC gave that agency adequate notice.").  Accordingly, Plaintiff's affair with Larrier, and the allegations of harassment from him and other co-workers attendant to the affair, would fall within the scope of the EEOC investigation and are therefore "reasonably related" to Plaintiff's EEOC Complaint.

Plaintiff's discrimination claims that occurred after the close of the EEOC investigation on September 16, 2015 fall outside the scope of the EEOC investigation and would not be exhausted unless they alleged conduct that was "retaliation for filing the EEOC charge" or was "carried out in precisely the same manner alleged in the EEOC charge." *Soules v. Connecticut, Dept. of Emerg. Services and Pub. Protec.*, 882 F.3d 52, 57 (2d Cir. 2018) (citation and quotation marks omitted). For example, Plaintiff specifically notes that the incident of harassment with co-worker "Peyton" occurred on October 4, 2015, UMF at ¶155, and the incident with Angel occurred in or around October 2016, ECF No. ¶163. Plaintiff does not allege that these later incidents were carried out in precisely the same manner as the harassment carried out by "Levy," Larrier, or her other co-workers; or that the harassment was retaliation for her filing the EEOC Complaint. Thus, Plaintiff has not exhausted her administrative remedies for these claims. This analysis is complicated by the fact that Plaintiff does not recall the specific times or identities of employees who harassed her, including the employees who tampered with her cellphone and car, who called her a "terrorist," or accused her of "poisoning them." UMF at ¶148. Plaintiff also does not recall the exact date or time of the incident with Nankoo. *See* Pl. Depo. at 383. However, some of the harassment occurred before Plaintiff filed her EEOC Complaint, including the incidents of physical harassment by Larrier, his sending sexually explicit pictures, co-workers calling Plaintiff a "cheap bitch," and Larrier telling co-workers that Plaintiff gave him a sexually transmitted disease. *See* SAC at 41. As set forth below, a reasonable jury could find, based on the evidence of harassment that occurred before the close of the EEOC investigation, that Plaintiff has sufficiently alleged hostile workplace claims.

B. **Merits of Hostile Work Environment Claims**

Plaintiff brings hostile work environment claims pursuant to Title VII, NYSHRL, and NYCHRL.  The hostile work environment standard and analysis for Title VII and NYSHRL claims is essentially the same. *See Lawrence v. Chemprene, Inc.*, No. 18-CV-2537, 2019 WL 5449844, at *10 (S.D.N.Y. Oct. 24, 2019).  However,  "courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

### i.   **Title VII & NYSHRL**

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  In order to succeed on a hostile work environment claim under Title VII, a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir.2014) (citing *Harris*, 510 U.S. at 21–22).

Considering only Plaintiff's exhausted claims, a reasonable jury could conclude that her workplace was permeated with discriminatory intimidation and harassment severe enough to create an abusive working environment.  Indeed, Plaintiff alleges that she was subject to a litany of harassment, including physical intimidation by bucking of her kneecaps; at least fourteen

pornographic text messages; and name-calling from co-workers after they discovered her relationship with her supervisor.  Most strikingly, Plaintiff had an axe swung at her head repeatedly.  *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]t is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace.").  A reasonable fact-finder could conclude that this incident was motivated by discrimination based on Plaintiff's gender because it occurred after a co-worker found out about Plaintiff's affair with Larrier and because Larrier—who had been sexually harassing Plaintiff for months at the time of the incident—was present and said "it's only a matter of time." *See Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) ("Facially neutral incidents may be included . . . among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex.").  Plaintiff alleges a pattern of harassment based on her gender that was severe, frequent, and at times physically threatening.  Accordingly, a reasonable jury could return a verdict Plaintiff's favor on her hostile work environment claim and Defendants' motion for summary judgment is denied.[5]

### ii.   NYCHRL

The standard for maintaining a hostile work environment claim is lower under the NYCHRL." *Bermudez v. City of New York*, 783 F.Supp.2d 560, 579 (S.D.N.Y. 2011).  Plaintiff

---

[5] Moreover, at a minimum there are factual disputes about the timing and details of some of the alleged harassment against Plaintiff, and consequently whether the Court can consider those incidents for purposes of Plaintiff's hostile work environment claim.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)).  These factual disputes are genuine and material because they may affect the outcome of Plaintiff's hostile work environment claim and a reasonable fact finder could conclude that they occurred before the conclusion of the EEOC investigation.

"need only adduce evidence of 'the existence of unwanted gender-based conduct' because liability under NYCHRL is 'determined by the existence of unequal treatment.'" *Id.* (quoting *Williams*, 872 N.Y.S.2d 27, 38 (2009)).  For the reasons set forth above, a reasonable jury could conclude that Plaintiff was subject to "unwanted gender-based conduct" based on her allegations of physical intimidation, unwanted pornographic text messages, name-calling, propositions for sex, and an axe swung at her head.  Moreover, since a reasonable jury could render a verdict for Plaintiff on her hostile work environment claims under Title VII and NYSHRL, Plaintiff also meets the lower standard for NYCHRL claims.

### C.  Liability for Defendants

#### i.    Liability for Transit Authority

"An employer's liability for hostile work environment claims depends on whether the underlying harassment is perpetrate by the plaintiff's supervisor or his non-supervisory co-workers. . . . An employer is strictly liable for harassment perpetrated by a supervisor, unless the employer is able to establish an affirmative defense showing that it 'exercised reasonable care to prevent and correct [] any . . . harassing behavior' and that the plaintiff 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise.'" *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).  An employee is a "supervisor" for purposes of Title VII if "he or she is empowered by the employer 'to take tangible employment actions against the victim'." *Id.* at 114–15 (citation omitted).[6]

---

[6] Plaintiff does not allege any facts, nor does the Court find any in the record, to support a conclusion that the Transit Authority knew or could have reasonably known about the incidents of harassment alleged in this action.  Indeed, Plaintiff admits that she did not report the harassment to anyone at the Transit Authority aside from her July 20, 2017 complaint, which came well after most of the allegations in this action and for which Plaintiff did not cooperate with the Transit

At the time of Plaintiff's affair with Defendant Larrier, he was a Maintenance Supervisor Level I ("MSI") at the East 180th Street location. He became a MSI on March 24, 2007. UMF at ¶77. Though MSIs cannot "appoint, terminate, demote, promote, [or] reassign" employees, they can write employees up or "take someone out of service for misconduct." *Id.* at ¶¶88–89. "Nankoo," who also made sexually inappropriate comments to Plaintiff, was another one of her MSI supervisors. *Id.* at ¶166. Since both Nankoo and Larrier had the authority to write Plaintiff up or even take her "out of service," they were "empowered by the [Transit Authority] as a distinct class of agent to make economic decisions affecting other employees under [their] control." *Vance v. Ball State U.*, 570 U.S. 421, 440 (2013) (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)). Accordingly, the Transit Authority is strictly liable for their conduct unless it can establish the *Faragher/Ellerth* defense by demonstrating that (1) it "exercised reasonable care to prevent and correct [] any . . . harassing behavior" and (2) that Plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise." *Faragher*, 524 U.S. at 807.

The *Faragher/Ellerth* defense applies to Plaintiff's Title VII claims because Plaintiff unreasonably failed to take advantage of the Transit Authority's widely known anti-discrimination and anti-harassment policies and procedures. "An employer may demonstrate the exercise of reasonable care, required by the first element, by showing the existence of an antiharassment policy during the period of the plaintiff's employment, although that fact alone is not always dispositive."

---

Authority's internal investigation. UMF at ¶¶188–203. As such, the Transit Authority cannot be held liable for harassment that occurred from Plaintiff's non-supervisory coworkers. *See Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) ("If the harassment is perpetrated by the plaintiff's non-supervisory coworkers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.") (citation and quotation marks omitted).

*Ferraro v. Kellwood Co*, 440 F.3d 96, 102 (2d Cir. 2006).  The Transit Authority has an Office of Equal Employment Opportunity and a robust Sexual Harassment Policy, it annually distributes its policies and procedures to employees, and it conducts mandatory annual training for all employees in regard to its Sexual Harassment Policy. UMF ¶¶ 27–40.  The Transit Authority also has an elaborate complaint procedure which includes a full, confidential investigation conducted by the Equal Employment Opportunity & Diversity Office. *Id.*  Plaintiff does not provide any reasonable reason for not reporting the alleged harassment to her supervisors, the EEOD office, or anyone else at the Transit Authority. *See* Pl. Depo. at 381 (Q: "Did you report any of these alleged comments or incidents to anyone at Transit?" A: "No, but mainly because I had been there for so long. I guess in a way I'm kind of desensitized to it. I just got used to the situation of what it is. Yes, I could have reported. I didn't because I would be there all day. All I wanted to do is my job.").  Since Plaintiff unreasonably failed to use the Transit Authority's complaint procedure, the Transit Authority is shielded from liability for Plaintiff's hostile work environment claims under Title VII. *See Ferraro*, 440 F.3d at 102 ("[U]nder the second element, proof that an employee has unreasonably failed to use the employer's complaint procedure normally suffices to satisfy the employer's burden.").[7]

---

[7] The *Faragher/Ellerth* defense does not apply "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Faragher*, 524 U.S. at 808.  Plaintiff, however, does not allege that she was subject to any "tangible employment action." "The word 'culminate' requires that the tangible employment action be linked to the supervisor's discriminatory harassment." *Ferraro v. Kellwood Co*, 440 F.3d 96, 102 (2d Cir. 2006).  The only "tangible employment action" Plaintiff alleges that is linked to the harassment from either Larrier or Nankoo was her decision to pick out of the 180th Street assignment.  Plaintiff does allege that this reassignment was an "undesirable reassignment" that was a product of the harassment from her supervisor, Defendant Larrier. *See* Pl. Depo. at 103–04 ("I just figured let me get out of here and I just picked another assignment totally away from 180th Street. It was out of my way actually, but I figured it would give us the distance. He wouldn't be my immediate supervisor and I had a chance to kind of, you know, start fresh."); *see also* SAC at 42 ("I picked another location to work so that I would not have to interact with him as much and I

Finally, the Court turns to the Transit Authority's liability pursuant to Plaintiff's NYSHRL and NYCHRL claims. The *Faragher/Ellerth* defense is inapplicable in the NYCHRL context. *See Zakrzewska v. New School*, 620 F.3d 168, 170 (2d Cir. 2010). NYCHRL, however, "adopts a more rigorous standard than federal law to impute liability to an employer." *Torres v. City of New York*, 18-CV-3644, 2019 WL 1765223, at *5 (S.D.N.Y. Apr. 22, 2019). An employee will be held liable under NYCHRL for the acts of an employee or agent when the "employee or agent exercised managerial or supervisory responsibility." N.Y.C. Administrative Code § 8-107(13)(b)(1). Defendant Larrier and Nankoo served in a managerial capacity over Plaintiff as a Maintenance Supervisor Level I and had the authority to take Plaintiff out of service for misconduct. Thus, the Transit Authority can be held strictly liable pursuant to the NYCHRL. *Garrigan v. Ruby Tuesday, Inc.*, 14-CV-155, 2014 WL 2134613, at *6 (S.D.N.Y. May 22, 2014) ("The NYCHRL imposes strict liability on employers for discriminatory acts of managerial employees.").

It is unclear whether the *Faragher/Ellerth* defense applies to NYSHRL claims. *See Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521 n.3 (S.D.N.Y. 2015). However, the balance

---

wanted to have a fresh start."). Indeed, when asked whether the Clipper job she transferred to at Corona Yard was more desirable than other jobs, she noted: "Not necessarily. It depends who you ask. A clipper job is a really dirty job. You are drilling, clipping and a lot of debris goes in your face. A lot of guys don't like that. They don't like that kind of dirt on them." Pl. Depo. at 113.

However, the alleged "tangible employment action" was chosen by Plaintiff herself and was not the product of an action taken by her supervisor. *See Ellerth*, 524 U.S. at 762 ("As a general proposition, only a supervisor, or other person acting with the authority of the company, can cause this sort of injury. . . . Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control."). Plaintiff's choice to subject herself to a tangible employment action is akin to constructive discharge, which does not count as a "tangible employment action" for purposes of the *Faragher/Ellerth* defense. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004) ("Absent 'an official act of the enterprise,' as the last straw, the employer ordinarily would have no particular reason to suspect that a resignation is not the typical kind daily occurring in the work force.") (citation omitted).

of authority in this Circuit applies the *Faragher/Ellerth* defense to claims under the NYSHRL. *See Setelius v. Natl. Grid Elec. Services LLC*, 11-CV-5528, 2014 WL 4773975, at *29 (E.D.N.Y. Sept. 24, 2014) (collecting cases); *see also Joyner v. City of New York*, No. 11-CV-4958, 2012 WL 4833368, at *4 (S.D.N.Y. Oct. 11, 2012) ("Although there appears to be no controlling authority establishing that the *Ellerth/Faragher* defense is available to claims under state law, the New York State Court of Appeals has suggested that this is so, and the plaintiff does not argue otherwise."). This Court agrees with the analysis in *Setelius*: "In light of the intimations in two New York Court of Appeals cases that the *Faragher/Ellerth* defense does apply to claims brought under the NYSHRL, the decisions of the intermediate level New York state courts, and the broader principle that the Second Circuit and the New York Court of Appeals 'typically treat[s] Title VII and NY[S]HRL discrimination claims as analytically identical, applying the same standard of proof to both claims,' the Court applies the *Faragher/Ellerth* defense to Plaintiff's NYSHRL hostile work environment claim." *Setelius*, 2014 WL 4773975 at *29 n.25 (citations omitted). Accordingly, the Transit Authority is shielded from liability for Plaintiff's NYSHRL hostile work environment claims.

In sum, Plaintiff's Title VII and NYSHRL hostile work environment claims against the Transit Authority are barred by the *Faragher/Ellerth* defense, but her NYCHRL survive.

### ii.    Liability for Defendant Larrier

Plaintiff's individual claims against Defendant Larrier under Title VII cannot stand because "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). However, NYSHRL and NYCHRL allow for individual liability under certain circumstances. NYSHRL allows individuals to be sued in their personal capacities under theories of direct or indirect liability. Under a direct liability theory, an "employer" who "actually

participates in the conduct giving rise to the discrimination" can be held liable. N.Y. Exec. Law §
296(1). An "employer" is "an individual who has an ownership interest in the relevant
organization or the power to do more than carry out personnel decisions made by others."
*Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (citation omitted). Under
a theory of indirect liability, an individual can be sued in their personal capacity if they "aid, abet,
incite, compel, or coerce the doing of any of the acts forbidden under this article, or attempt to do
so." N.Y. Exec. Law § 296(6). Under the indirect theory of liability, a co-worker who "actually
participates in the conduct giving rise to a discrimination claim" can be held liable under the
NYSHRL "even though that co-worker lacked the authority to either hire or fire the plaintiff."
*Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (citation and quotation marks omitted).
"This extends to personal liability 'for aiding and abetting allegedly unlawful discrimination by
[an] employer even where [an individual defendant's] actions serve as the predicate for the
employer's vicarious liability,' so long as the employer's conduct has also been found to be
discriminatory under the NYSHRL." *Xiang v. Eagle Enterprises, LLC*, 19-CV-1752, 2020 WL
248941, at *5 (S.D.N.Y. Jan. 16, 2020), 2020 WL 248941, at *5 (alteration in original) (quoting
*Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012)).

Defendant Larrier actively participated in the conduct giving rise to Plaintiff's
discrimination claims and may be liable under either the direct or indirect theory of liability.
Larrier was Plaintiff's supervisor and had the authority to take Plaintiff out of service for
misconduct, so he may qualify as an "employer." If he does qualify as an "employer," then he can
be held liable under a direct theory of liability pursuant to N.Y. Exec. Law §296(1). Larrier can
also be held liable under an indirect theory pursuant to N.Y. Exec. Law §296(6) because of his
participation in the allegedly discriminatory conduct. *See Rojas v. Roman Catholic Diocese of*

*Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) ("[A]n individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim.").

NYCHRL also provides for direct individual liability if "an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person . . . discharge[s] from employment such person or [] discriminate[s] against such person in compensation or in terms, conditions or privileges of employment." NYCHRL § 8-107(1)(a). "Thus, the NYCHRL provides for individual liability regardless of ownership or decision-making power." *Diaz v. City U. of New York*, 13-CV-2038, 2014 WL 10417871, at *31 (S.D.N.Y. Nov. 10, 2014), *report and recommendation adopted in part*, 13-CV-2038, 2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015). Again, it is undisputed that Defendant Larrier participated in the conduct that gave rise to Plaintiff's discrimination claim. *See Feingold*, 366 F.3d at 158–59 ("Employees may be held personally liable under . . . the NYCHRL if they participate in the conduct giving rise to a discrimination claim.") (citation omitted). For the reasons discussed above, and because claims brought under NYCHRL "must be viewed independently from and more liberally than their federal and state counterparts," a reasonable jury could render a verdict in favor of Plaintiff on her NYCHRL claim and find Defendant Larrier individually liable. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (citation omitted).

## II.   Gender Discrimination & Retaliation Claims

Plaintiff brings gender discrimination and retaliation claims pursuant to Title VII, NYSHRL, and NYCHRL. Unlike Plaintiff's hostile work environment claims, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Morgan*, 536 U.S. at 110. Accordingly, for purposes of Plaintiff's gender discrimination and retaliation claims pursuant

to Title VII, the Court cannot consider Plaintiff's claims that are time-barred (i.e., those that occurred before September 24, 2014) or unexhausted (i.e., those that occurred after the close of the EEOC investigation on September 16, 2015).

### A. Gender Discrimination

#### i. Title VII and NYSHRL

To establish a *prima facie* case of gender discrimination under Title VII and NYSHRL, a plaintiff must show that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citation omitted).  Once a plaintiff establishes a *prima facie* case of gender discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the disparate treatment. *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).  Finally, if the employer provides such a reason, then the burden shifts back to the employee "to prove that discrimination was the real reason for the employment action." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Plaintiff puts forth four potential adverse employment actions: (1) she was passed over for overtime pay; (2) she lost pay for the days she was absent without leave; (3) she was not selected for promotion to Distribution Maintainer; and (4) she had to transfer jobs from East 180th Street to Corona Yard.  As a threshold matter, all four of the adverse employment actions do not fall in the time-window between when Plaintiff's claims are not time-barred and exhausted.  Plaintiff applied for the position of Power Distribution Maintainer in 2015 and 2017; she lost pay for the days she was absent without leave in 2017 and 2018; her overtime claims are likely from her time at East 180th Street, *see* Pl. Depo. at 58; and she transferred out of East 180th Street in May 2014.

24

Even assuming that these four employment actions fell in an actionable time-window, the Transit Authority provides a legitimate, nondiscriminatory reason for each of the actions.  For the overtime claim, Plaintiff concedes that overtime at the Transit Authority is given through a rotation system based on seniority. *See* Pl. Depo. at 58.  For the lost pay claims, in both instances that Plaintiff lost pay, she had left work without authorization and was not paid pursuant to the Transit Authority's official policy. UMF at ¶230.  For the promotion claim, the Transit Authority claims that Plaintiff was denied a promotion because of her previous issues with unexcused absences and sick leave time.  This assertion is supported by the responses sent by the Transit Authority to Plaintiff at the time of her applications for the position of Distribution Maintainer in 2015 and 2017, *see* ECF Nos. 133-21, 133-22, which note that Plaintiff was ineligible for the Distribution Maintainer job based on her sick leave usage and disciplinary records.  This also accords with what Plaintiff was told at the time of her application. *See* Pl. Depo. at 368 ("But I did ask somebody at power distribution why I didn't get it. They said to me because my sick time was off or whatever. Like, I think I had my surgery and I took a lot of sick time. I can't not take sick time to heal. I think it was like, three weeks I had took off or something like that.").  Finally, for the transfer claim, Plaintiff herself picked out of the East 180th Street location and had more opportunities for overtime pay and higher pay as a dual rate specialist clipper at Corona Yard. *See* Pl. Depo. at 111–12; *see also* UMF at ¶123.  Accordingly, Plaintiff's Title VII and NYSHRL claims for gender discrimination are dismissed.

    ii.   **NYCHRL**

"To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102,

110 (2d Cir. 2013). Plaintiff has adequately demonstrated differential treatment "at least in part *because of* her gender." *Id.* Given that "the challenged conduct need not even be 'tangible' (like hiring or firing," the Court considers Plaintiff's allegations of differential treatment—including inappropriate touching by co-workers, pornographic text images from Larrier, and the axe-incident—which Plaintiff plausibly alleges were based on her gender. Defendants would only be entitled to summary judgment on Plaintiff's NYCHRL claim "if the record establishes as a matter of law that 'discrimination play[ed] *no* role' in its actions." *Id.* n.8 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (1st Dep't 2009)). Defendants have not demonstrated that the above-described discriminatory conduct was not a product of discrimination against Plaintiff because of her gender. Accordingly, Plaintiff's NYCHRL gender discrimination claim survives.

### B. **Retaliation Claims**

#### i. **Title VII and NYSHRL**

To state a *prima facie* claim for retaliation under Title VII and NYSHRL, a plaintiff must demonstrate that: (1) she participated in a protected activity; (2) the defendant was aware of her protected activity; (3) she suffered an "adverse employment action;" and (4) there is "a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 131 F.3d 834, 844 (2d Cir. 2013) (citation and quotation marks omitted). Proof of a causal connection requires a plaintiff to show that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).

As discussed above for purposes of Plaintiff's Title VII claims, the four potential adverse employment actions Plaintiff alleges are either time-barred or unexhausted. Even considering these four actions, Defendants provide legitimate, non-discriminatory bases for each of the actions.

As such, the desire to retaliate for Plaintiffs' filing of the EEOC Complaint or this lawsuit are not the but-for cause of the alleged adverse employment actions.  Plaintiff's only other claim of an adverse employment action was that she was suspended for one day in March 2017 and April 2018, both of which occurred after she filed her lawsuit.  However, both of these actions took place years after she filed her lawsuit. *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation. Six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation.") (citation omitted). Moreover, for both suspensions, Plaintiff was absent without authorization and was suspended pursuant to the Transit Authority's policy. *See* UMF at ¶230–236.  Aside from these instances, "Plaintiff has not been the subject of any other discipline, reduction in pay, or demotion." *Id.* at ¶236.  Accordingly, Plaintiff cannot demonstrate that any potential adverse employment action taken by Defendants was the caused by retaliation for her filing of the EEOC Complaint, this lawsuit, or any other protected conduct.

### ii.   **NYCHRL**

"[T]he retaliation inquiry under the [NY]CHRL is 'broader' than its federal counterpart. *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (quoting *Williams*, 872 N.Y.S. 2d at 34).  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citation omitted).  As discussed above, Plaintiff does not allege any retaliatory conduct taken by Defendants that would be "reasonably likely to deter a person from engaging in such action." *Id.*  Indeed, the only adverse employment actions taken by

27

Defendants—including suspending Plaintiff for pay when she was absent without leave; assigning overtime according to the non-discriminatory policy; allowing Plaintiff to pick a new job location; and not promoting Plaintiff based on company qualification standards—were taken for legitimate, non-discriminatory reasons and are thus unlikely to deter future employees from opposing their employer's discrimination.   Accordingly, even under the NYCHRL's more liberal pleading standard for retaliation claims, Plaintiffs claims are dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiff's Title VII and NYSHRL hostile work environment claims are dismissed, but her NYCHRL hostile work environment claim survives. Plaintiff's Title VII and NYSHRL gender discrimination claims are dismissed, but her NYCHRL discrimination claim survives.  Finally, Plaintiff's retaliation claims are dismissed.

This case is now ready for trial.  Plaintiff is hereby **ORDERED** to file a letter with the Court within 21 days indicating whether she would like the Court to appoint her pro bono counsel to litigate her surviving claims.  Defendants may file any response to Plaintiff's letter within one week of its filing.


**SO ORDERED.**
**Dated:  September 21, 2020**
          **New York, New York**

_____
          **ANDREW L. CARTER, JR.**
          **United States District Judge**